Regina JOHNSON, Appellant,

v.

Chad JOHNSON, Respondent.

No. WD 61253.

Missouri Court of Appeals,
Western District.

Aug. 19, 2003.

James A. Rynard, Kansas City, for Appellant.

Anthony A. Stein, Kansas City, for Respondent.

Before ULRICH, P.J., and HOWARD and NEWTON, JJ.

VICTOR C. HOWARD, Judge.

Regina Johnson (Petitioner) appeals from a decree of dissolution of her marriage to Chad Johnson (Respondent), which was entered after a hearing on Respondent's motion for default judgment. The trial court found Petitioner in default for (1) failing to file a reply to Respondent's counter-petition for custody of the parties' child, and (2) for disregarding more than one court order compelling discovery and the payment of costs and attorney's fees. In the decree, the court awarded primary physical custody of the parties' minor child to Respondent. Petitioner claims the trial court erred in denying her the opportunity to present evidence concerning the suitability of Respondent as primary custodian of the child and in granting judgment by default.

We reverse and remand for further proceedings.

### Background

The parties were married on February 26, 1994, in Kansas City, Missouri. On July 21, 1995, their daughter, Shelby, was born. The parties separated on August 17, 1998. Petitioner filed her verified peti-

tion for dissolution of marriage on September 4, 1998, in which she requested primary physical custody of Shelby, subject to Respondent's reasonable visitation. The petition was personally served upon Respondent on September 26, 1998, and he filed his answer on October 24, 1998.

On January 13, 2000, Respondent moved for sanctions against Petitioner for failure to appear at her scheduled deposition on October 5, 1999. On February 24, 2000, the trial court, finding "no suggestions in opposition," entered its order sustaining Respondent's motion for sanctions. In this order, the court found that "Petitioner did not appear for the October 5, 1999 nor for the rescheduled deposition."[1] Thus, the court ordered Petitioner "to pay the Respondent $500.00 in attorney's fees and court reporter costs and that the Petitioner's Verified Answer, filed on October 14, 1998 be stricken." As explained below, Petitioner had not filed an "answer," nor does there appear to have been a counter-petition.

The case proceeded with discovery. On August 8, 2000, upon Respondent's motion, the court ordered a home study and continued the trial setting. On October 24, 2000, the trial court[2] granted Petitioner's second counsel, who had entered her appearance eight days before the sanctions order was issued but apparently filed no response, leave to withdraw. The day before this order allowing Petitioner's second attorney to withdraw was entered by the court, Petitioner's current attorney initiated proceedings for *pendente lite* orders and discovery on Petitioner's behalf. The case proceeded on various motions and discovery. On September 14, 2001, the trial court entered an order setting the matter for trial on November 1, 2001, at 2:00 p.m. The order directed that "[a]ll parties are to appear along with proposed judgment/order."

The parties appeared for trial that day, and Respondent filed his "Motion for Judgment by Default." He alleged in his suggestions in support that a default judgment was proper under Rule 74.05(a), because Petitioner had failed to reply to "respondent's October 24, 1998 counter-claim" as required by Rule 55.25(b), and "petitioner's pleadings" had previously been stricken as a sanction for her "previous and repeated contumacious and deliberate disregard for the court's authority." Thus, Respondent maintained that Petitioner "should not be permitted to put on evidence or cross-examine any of respon-

1. The record shows that Respondent mailed the notice of deposition for the October 5th deposition to Petitioner's first attorney on September 20, 1999, the same day the court granted the attorney leave to withdraw. As a courtesy, that attorney indicated by letter to Respondent's attorney that he forwarded a copy of the notice to Petitioner.

A close examination of the record indicates that the October deposition appears to have been the only one scheduled and noticed. In his suggestions we have in support of Respondent's Motion for Sanctions, Respondent maintains that "[o]n December 20, 1999, respondent again mailed a copy of a notice to take petitioner's deposition," and "[w]ithout just cause or excuse, petitioner again failed to appear for her deposition." However, the alleged second "deposition notice" attached thereto as "Exhibit B" and incorporated therein is actually a "Certificate of Mailing," filed with the court on December 22, 1999, stating only that "[o]n the 20th day of December 1999, respondent's deposition notice to depose petitioner was mailed to [Petitioner] ... all pursuant to Supreme Court Rule." It is not a "notice to take deposition" as required by Rule 57.03(b)(1) (1999), which requires the notice to include the time and place where the deposition is to be taken. Thus, the record available to us does not indicate a second "rescheduled" deposition date.

2. A number of different judges presided over the various stages of this case.

dent's witnesses or respondent himself." The docket sheet indicates that the trial court granted Petitioner until November 20, 2001, to respond to the motion, and she filed her suggestions in opposition on November 19, 2001. Yet, on December 11, 2001, the trial court issued a "Notice of Hearing," which stated as follows:

> The Court has reviewed this file and notes that the Court granted Petitioner an extension of time to file her response to Respondent's Motion for Judgment by Default by November 20, 2001. It is now December 11, 2001, and no responsive pleadings have been filed. Accordingly, [t]he Court sets this case for Default hearing on January 10, 2002, at 2:00 p.m.

On January 10, 2002, both parties appeared. When the court pointed out that it had granted an extension of time to reply to Respondent's motion for default, counsel for Petitioner explained to the court that he had filed a response on November 19, 2001. The following brief exchange then occurred:

> THE COURT: ... Well, your response never made it in the file. So—
>
> [PETITIONER'S COUNSEL]: Well, this is my copy, Your Honor. Here it is. It is file stamped.
>
> THE COURT: If it is here, it is way down in the middle of nowhere.

Nothing further was said of the matter, and the trial court proceeded to hear additional argument from counsel concerning what pleading had been stricken in the court's previous sanction order and the propriety of proceeding in default. The trial court then found there was "no way around" the fact that Petitioner had not filed an answer to Respondent's counter-petition and denied Petitioner's oral motion to file an answer out of time. The case proceeded in default. Although the trial court allowed Petitioner to cross-examine Respondent on limited issues concerning his purported income "as a courtesy," it refused to allow her to present any evidence concerning the suitability of Respondent as primary custodian of the parties' minor child.

Following the hearing, the trial court signed the "Decree of Dissolution of Marriage" prepared by Respondent. In the decree, the trial court found, among other things, that awarding primary physical custody of Shelby to Respondent and awarding joint legal custody to both parties was in the child's best interests. The court further found Petitioner in default for two reasons: (1) because she had "failed to file a reply to respondent's October 24, 1998 counter-petition for custody of the parties' child," and (2) because she had "been contumacious and [had] deliberately disregarded [the] court's prior orders. As a result of Petitioner's disobedience, [the] court previously struck petitioner's pleadings; therefore, [the] court [found] petitioner in default as to respondent's counter-petition for primary custody of the parties' child." The trial court denied Petitioner's "Motion for New Trial."

### Discussion

For the following reasons, the record before this court precludes our review of Petitioner's points on appeal and requires us to reverse and remand to the trial court for further proceedings.

■ **A. The Trial Court's Sanctions Order:** First, there are problems related to the trial court's sanction order and what its intended sanction was.

As set forth above, the sanctions order entered on February 24, 2000, by the trial court purported to strike "the Petitioner's Verified Answer, filed on October 14, 1998." However, no such answer appears

in the record on appeal, the docket sheet does not reflect such answer's existence prior to being stricken, and Petitioner candidly admitted that she did not file any answer. Respondent, however, insists that we can reasonably interpret the sanctions order as striking Petitioner's *Petition.* However, to so interpret the order would require this court to speculate or make assumptions about what the trial court intended, which the record before us does not allow us to do with the requisite certainty. *See Higher Educ. Assistance Found. v. Hensley,* 841 S.W.2d 660, 663 (Mo.1992) (explaining that, although the Court "suspect[ed] that the trial court intended to dismiss this cause without prejudice for prematurity of action, there [was] sufficient ambiguity in the record that it [could not] be said with the requisite certainty that that [was] what the trial court intended").

■ **B. No Counter–Petition for Dissolution:** Moreover, as explained below, it does not appear from the record before us that Respondent filed anything that could be considered a counter-petition, so Petitioner could not have been required to file such an answer. Without a counter-petition, if, as Respondent suggests, we were to engage in speculation and make assumptions to interpret the sanctions order as striking Petitioner's Petition for Dissolution rather than her "answer" as it was delineated in the sanctions order, the record before us suggests that nothing would be left for the trial court to decide. Without a pending petition, the trial court would lose jurisdiction, so this court would have no jurisdiction.[3]

As previously explained, the trial court found as one basis for its default judgment that Petitioner failed to file an answer to Respondent's *"counter-petition"* filed Oc-

tober 24, 1998. Yet, this court found no discernable basis for such decision because no counter-petition appears in the record on appeal. The only October 24, 1998, pleading appearing on the docket sheet and in the record on appeal is Respondent's *Answer* to Petitioner's petition for dissolution. In his answer, Respondent admitted Petitioner's jurisdictional allegations and acknowledged that the marriage was irretrievably broken. He then admitted and denied certain other paragraphs concerning the parties' property and debts and issues relating to the court's jurisdiction over the child custody matter. In the final paragraph, Respondent states:

> Further answering and by way of affirmative defense, Respondent states that Petitioner's Petition has not been properly verified by petitioner, has not been signed by Petitioner's attorney, and the parenting plan is lacking. Furthermore, Respondent should be granted primary physical custody over the child with both parties being granted joint legal custody.

This cannot be interpreted as a "counter-petition."

■ Generally, "[t]he legal character of a pleading is determined by its subject matter and not its designation to the extent that courts ignore the denomination of a pleading and look to its substance to determine its nature." *Weber v. Weber,* 908 S.W.2d 356, 359 (Mo. banc 1995). However, the principle "is not intended to constitute license to answer an opponent's allegations, assert affirmative defenses, and request affirmative relief in a single document in contravention of explicit [Missouri] Supreme Court rules." *Id.* In *Weber,* the respondent argued that the trial court could proceed on his answer

---

**3.** Although neither party raised this issue, we determine our jurisdiction over the matter *sua sponte. Reisinger v. Reisinger,* 39 S.W.3d 80, 83 (Mo.App. E.D.2001).

seeking affirmative relief after the petitioner dismissed her petition for dissolution of marriage. *Id.* at 357. In considering the issue, the supreme court detailed its rules governing civil pleadings, specifically those required in a dissolution proceeding. *Id.* at 358. It concluded that the respondent's "answer" filed therein, which was substantially similar if not indistinguishable from that filed by Respondent in the case now before us, "contravene[d] the rules" that "establish an organized procedure for identifying issues and defenses for trial and provide requisite guidance to attorneys and pro se litigants for asserting claims and defenses," thereby "invit[ing] confusion in a system designed to provide organization." *Id.* at 359. The court continued:

> One who desires dissolution of marriage who has been served as respondent in a dissolution of marriage action can, by rule, assert such claim by cross-petition if the relief is desired, thereby serving notice on the initiating party and the court that, while the independent cross-petition pends, it must be adjudicated.

*Id.* The *Weber* court held that while the rules provided that the respondent, by his answer, could respond to petitioner's petition "to identify those factual claims asserted by [the petitioner] and to respond to [the petitioner's] demand for relief[,][t]he rules do not provide that an answer shall serve to assert the responding party's affirmative claim for dissolution of marriage." *Id.* Accordingly, "[u]pon dismissal of the [petitioner's] petition, the absence of a pending affirmatively pleaded cross-petition concluded the case. Nothing was left for the court to decide." *Id.*

The same result would be reached in this case if the trial court, by its sanctions order, intended to strike Petitioner's petition—with no pending counter-petition, the case would come to an end. But, that would call for sheer speculation. Taking the court's action literally, it struck a pleading that did not exist, i.e., "Petitioner's Verified Answer." In essence, that action was a nullity and could not have been used to consider Petitioner in default. We remand for the court to proceed with the action as it existed before it struck the non-existent pleading.

### Conclusion

The Decree of Dissolution is reversed, and the cause is remanded for the trial court to proceed as indicated herein.

ULRICH, P.J., and NEWTON, J., concur.