**STATE of Missouri, Appellant,**

v.

**Jeffrey Luke MOAD, Respondent.**

**No. WD 70527.**

Missouri Court of Appeals, Western District.

Sept. 29, 2009.

Mark A. Richardson, Cole County Prosecuting Attorney, Cheryl C. Nield, Assistant Prosecuting Attorney, Jefferson City, MO, for Appellant.

Douglas W. Hennon, Jason H. Ludwig, Jefferson City, MO, for Respondent.

Before Division II: VICTOR C. HOWARD, Presiding Judge, and JOSEPH M. ELLIS and MARK D. PFEIFFER, Judges.

MARK D. PFEIFFER, Judge.

The State appeals from an order of the Circuit Court of Cole County (trial court) granting defendant Jeffrey Moad's (Moad) motion to dismiss or, in the alternative, to suppress all evidence related to the car involved in Moad's charged crime of vehicular manslaughter. At issue was whether the Missouri Highway Patrol's (MHP) release of the car to the victim's family prior to giving the defendant an opportunity to test the evidence was a violation of his due process rights.[1] The trial court sustained defendant's motion and excluded all evidence related to the vehicle. The State brings this interlocutory appeal. Because we conclude that the trial court's interlocutory order constitutes a discovery sanction and not a section 547.200.1(3)[2] statutory suppression of evidence, the trial court's

---

1. The vehicle was released approximately three days after the fatal accident in a vehicular manslaughter investigation, before Moad was given an opportunity to inspect the vehicle, and almost eight months before Moad was indicted.

2. All statutory references are to RSMo 2000 unless otherwise noted.

interlocutory order is not appealable. Thus, the appeal is dismissed.

## Statement of Facts

On February 14, 2006, Moad and Katie Winfrey were the sole occupants of a car that crashed, tragically killing Ms. Winfrey. State Trooper Bryan Salmons of the MHP was in charge of the investigation and was one of the first officers on the scene. At the scene, Trooper Salmons encountered Moad outside of the vehicle. Ms. Winfrey was also outside the vehicle but was trapped underneath. In his exchange with Trooper Salmons, Moad stated that he was an occupant of the vehicle but not the driver. Trooper Salmons directed personnel at the scene to gather evidence to attempt to establish who was driving the vehicle. At the scene, swabs of blood and tissue were removed from the driver's side section of the vehicle's windshield. The positions of the car seats were examined to determine if the seats were on their tracks and their positions relative to each other. Both seats were on their tracks, and the driver's seat was positioned significantly further back than the passenger seat. The driver's seat was checked to ensure that the seat mechanism was not broken and the seat was not moving freely without the mechanism engaged. The passenger seat was not checked in a similar fashion. Based on the facts that Moad had a head injury, was the taller of the two occupants, and had told his cousin that he would be driving the vehicle, Trooper Salmons placed Moad under arrest on the evening of February 14, 2006.

Trooper Salmons had the car towed to a storage lot on February 14, 2006. On February 15, 2006, the MHP's crash investigation team inspected the vehicle for evidence. The crash team completed their investigation the same day. According to Trooper Salmons, "within a day or so" following the completion of the crash team's investigation, but before Moad or his representatives were given an opportunity to perform an independent examination, Trooper Salmons contacted the next of kin of Katie Winfrey and released the vehicle to them.

On January 23, 2007, a grand jury indicted Moad for involuntary manslaughter. Before trial, the defense filed a motion in limine seeking to exclude all evidence from the vehicle since Moad did not have a chance to examine the vehicle before its release. A motion hearing was held on November 16, 2007. The only person to testify was Trooper Salmons. He testified that the release of the vehicle occurred after Trooper Salmons concluded, in his opinion, that all relevant evidence had been gathered from the vehicle by the MHP crash investigation team and that the transfer of the vehicle was in accordance with MHP procedures. The motion was overruled on January 18, 2008, and the case went to trial. The first trial ended with a mistrial on February 28, 2008.

Prior to the first trial and subsequent to the mistrial, Moad filed multiple discovery requests seeking the production of the MHP procedure or policy related to release of a vehicle post-accident. In response to these defense discovery requests and corresponding discovery orders by the trial court, documents purporting to contain relevant policies and procedures of the MHP were produced. However, none of the documents produced contained the relevant policy that Trooper Salmons had testified he relied upon in releasing the vehicle. On June 13, 2008, Trooper Salmons was deposed to determine exactly which policy he had relied upon so that it could be requested from the MHP. A further motion to compel discovery was served upon the State on June 16, 2008,

and, after *in camera* review, the court released further documents to the defense that had been produced by the MHP on July 31, 2008. These documents also failed to outline a procedure that would authorize the action that Trooper Salmons took in this case.

On November 21, 2008, Moad filed a "Motion to Dismiss, or, in the Alternative, to Suppress Evidence." On January 7, 2009, the court entered an order sustaining that motion. This interlocutory appeal follows.

■■■■ Prior to addressing the propriety of the trial court's exclusion of evidence, we must first determine whether this interlocutory appeal is properly before this court. In Missouri, the right to appeal is purely statutory, and where a statute does not confer the right to appeal, no appeal can exist. *Barlow v. State,* 114 S.W.3d 328, 331 (Mo.App. W.D.2003). Typically, a remedial writ is the only method that allows the State to request review of interlocutory orders by a trial court. *State v. Eisenhouer,* 40 S.W.3d 916, 918 (Mo. banc 2001). However, section 547.200.1(3) permits the State to appeal an interlocutory order suppressing evidence or where "the substantive effect" of the order results in suppressing evidence. Though the interlocutory order being appealed to this court is styled as a motion to suppress, the character of a pleading is " 'determined by its subject matter and not its designation.' " *Johnson v. Johnson,* 112 S.W.3d

460, 464 (Mo.App. W.D.2003) (*quoting Weber v. Weber,* 908 S.W.2d 356, 359 (Mo. banc 1995)). The question is whether this motion is a motion to suppress as defined by the statute that would confer a right of interlocutory appeal. "***Suppression*** of evidence is not the same thing as ***exclusion*** of evidence on the basis of some rule of evidence. ***Suppression*** is a term used for evidence that is not objectionable as violating any rule of evidence, but that has been illegally obtained." *In the Interest of N.D.C.,* 229 S.W.3d 602, 604 (Mo. banc 2007) (emphasis added). In essence, evidence that is excluded for procedural reasons or for violation of the rules of evidence or for any other reason not having its genesis in the argument that it was illegally obtained is not appealable by the State, while evidence that is excluded because it was illegally obtained is grounds for an interlocutory appeal. *Eisenhouer,* 40 S.W.3d at 919. Missouri courts have ruled that suppression of evidence is linked to section 542.296,[3] which lists the bases for a motion to suppress. *N.D.C.,* 229 S.W.3d at 603 n. 4; *State v. Puckett,* 146 S.W.3d 19, 22 (Mo.App. E.D.2004); *State v. Rivers,* 26 S.W.3d 608, 609 (Mo. App. W.D.2000). When an interlocutory order does not arise from one of these statutory parameters, it is not regarded as a motion to suppress unless it has the substantive effect of suppressing evidence because the evidence was, or would be, illegally obtained. *Eisenhouer,* 40 S.W.3d at 919. In *State v. Eisenhouer,* the Mis-

---

**3.** These bases are:

(1) that the search and seizure were made without warrant and without lawful authority;

(2) that the warrant was improper upon its face or was illegally issued, including the issuance of a warrant without proper showing of probable cause;

(3) that the property seized was not that described in the warrant and that the officer was not otherwise lawfully privileged to seize the same;

(4) that the warrant was illegally executed by the officer;

(5) that in any other manner the search and seizure violated the rights of the movant under section 15 of article I of the Constitution of Missouri, or the Fourth and Fourteenth Amendments of the Constitution of the United States.

§ 542.296.5.

souri Supreme Court ruled that an order quashing a subpoena because the evidence it yielded would be an illegal violation of the due process rights of the accused "had the 'substantive effect' of suppressing evidence, and the State may pursue [an] interlocutory appeal." *Id. Eisenhouer* is distinguished from the current case because the defendant in *Eisenhouer* was arguing that the investigative subpoenas authorizing the collection of the evidence would have been an illegal and unconstitutional violation of his freedom of religion. *Id.* at 918. In *State v. Puckett,* a case that was decided after *Eisenhouer* and which discussed that case, the Eastern District of this court noted that, in Missouri, the State's right to interlocutory appeal has consistently been limited to cases where illegally ***obtained*** evidence is at issue. *Puckett,* 146 S.W.3d at 24.

■ The facts in the instant case are similar to *State v. Puckett.* In that case, the defendant, Rachel Puckett, was criminally charged by information with the crime of possession of anhydrous ammonia in an unapproved container. *Id.* at 20. Puckett was found with a five-gallon propane tank filled with a gas. *Id.* at 21. After conducting tests indicating the tank was filled with anhydrous ammonia, the investigating police detective David Smith destroyed the tank along with its contents. *Id.* Puckett filed a motion to suppress, alleging that the destruction of the evidence was a violation of her due process rights and of Missouri's legislatively established procedures for the handling of hazardous evidence. *Id.* The trial court granted Puckett's motion to suppress, and the State filed an interlocutory appeal of the trial court's interlocutory order. *Id.* at 20. In ruling that the matter was not subject to an appeal, the *Puckett* court stated, "it is not the suppression of evidence because there was never any claim, evidence, or ruling that evidence had been illegally obtained. Instead, the court's order was one excluding evidence based on a statute governing the procedural handling of evidence." *Id.* at 24.

In the current case, the question before the trial court was whether evidence obtained by the State from a vehicle involved in a fatal crash was admissible after the vehicle was released within seventy-two hours and prior to the defendant in a criminal felony trial having an opportunity to examine it. As in *Puckett,* there was never any argument that the evidence had been illegally ***obtained.*** Rather, the issue was whether Trooper Salmons acted in bad faith in disposing of evidence. To determine whether Trooper Salmons was acting in bad faith, the defense had requested information on MHP procedures that would be relevant to the disposal of evidence. Trooper Salmons testified on multiple occasions that his release of the vehicle was pursuant to established MHP procedure. However, despite repeated discovery requests by the defense for the MHP procedure that would authorize the release of a vehicle in the fashion conducted by Trooper Salmons, the State failed or refused to provide the relevant documents. Instead, the State provided over fifty pages of irrelevant, or only marginally relevant, MHP procedure and policy excerpts. The key point in the motion, which was adopted by the trial court, is found in the trial court's statement that "[t]he State has failed to provide such policy, despite being ordered to do so[.]"

Under Missouri Rule of Criminal Procedure 25.18 (formerly rule 25.16) a trial court has discretion to craft "appropriate sanctions by the court." Those sanctions can include "order[ing] disclosure of material and information, grant[ing] a continuance, ***exclud[ing] evidence*** or enter[ing] such orders it deems just given the situation." *State v. Miller,* 935 S.W.2d 618, 623 (Mo.App. W.D.1996) (emphasis added)

(*quoting State v. Massey*, 867 S.W.2d 266, 268 (Mo.App. E.D.1993)). The timeline of the case and language included in the motion shows that the order excluding the evidence is intended as a sanction for a discovery violation.[4] Prior to the first trial, the trial court had overruled a motion in limine seeking to exclude the evidence from the vehicle on due process grounds. The interlocutory order excluding the evidence came only after the trial court's order requiring the production of the relevant documents was not complied with in a manner satisfactory to the trial court.

The trial court's first order compelling discovery was issued when the State's initial production of fifty-three pages of procedures failed to show a procedure authorizing the release of the vehicle. The trial court then not only allowed the State to produce the documents at issue to the trial court for *in camera* review, it also provided the State with over a year's time from the defense's first request to locate and procure an applicable authorizing procedure related to the disposal of vehicular evidence. It was only after it became clear that the documents that the State finally produced did not include the policy that Trooper Salmons referenced that the court issued its order excluding evidence obtained from the vehicle.[5] The trial court's order, therefore, is a discovery sanction and not a ruling to "suppress" illegally obtained evidence. For the rea-

sons noted above, a discovery sanction is not appealable by the State. Consequently, the interlocutory appeal is dismissed.

The dismissal of this interlocutory appeal does not leave the State without a remedy. The State may request a writ of prohibition. "A writ of prohibition is appropriate where there is [an] important question of law decided erroneously that would otherwise escape review." *N.D.C.*, 229 S.W.3d at 604. We make no judgment about whether or not such a writ would or should be granted.

VICTOR C. HOWARD, Presiding Judge, and JOSEPH M. ELLIS, Judge, concur.

---

4. Procedurally, whether or not the trial court's ruling was a discovery sanction is not the dispositive issue. What is dispositive is that the trial court's ruling excluding evidence is *not* related to any suggestion that the evidence was illegally obtained (i.e. "suppression" of evidence). Stated another way, evidence that is excluded, or the substantive effect of the ruling is evidence exclusion, based upon the argument that the evidence was illegally obtained constitutes "suppression" of evidence. But if evidence is excluded for any other reason, the trial court order does not constitute "suppression" of evidence,

and it is not subject to the State's statutory right of appeal.

5. In its reply brief, the State responds to the rationale for sanctions by arguing that it does *not* have MHP policies and procedures in its *possession* and thus implying that sanctions directed against it would be inappropriate. While this argument fails to address who a trial court should sanction in that scenario, it more importantly provides no support for why a discovery sanction excluding evidence is appealable.