**M & I MARSHALL & ILSLEY
BANK, Appellant,**

v.

**SADER & GARVIN, L.L.C.,
et al., Respondents.**

No. WD 71399.

Missouri Court of Appeals,
Western District.

Aug. 31, 2010.

Mark S. Carder and Nicholas J. Zluticky, Kansas City, MO, for Appellant.

James C. Morrow and M. Casey McGraw, Kansas City, MO, for Respondents.

Before Division I: JAMES M. SMART, JR., Presiding Judge, and MARK D. PFEIFFER and CYNTHIA L. MARTIN, Judges.

MARK D. PFEIFFER, Judge.

M & I Marshall and Ilsley Bank (M & I) appeals the order of the Circuit Court of Jackson County (trial court) granting Sader & Garvin, L.L.C.'s (S & G) motion to dismiss arbitration. In this interlocutory appeal, M & I argues that (1) the arbitration clause it relies upon was a valid and enforceable contract between the parties

and (2) M & I did not waive its right to seek to compel arbitration. We affirm the trial court's ruling and remand for further proceedings.

## Background Facts and Procedural History

On December 17, 2007, S & G was retained by an individual who purported to be an executive of Waison Meters Group Limited (WMGL), a Chinese company, for the purpose of assisting WMGL in collecting delinquent payments from the company's vendors. Two days later, on December 19, 2007, S & G received a Citibank "Official Check" from one of these vendors in the amount of $197,570.00. S & G was instructed by the claimed representative of WMGL to deposit the check less the firm's $2,500.00 retainer fee and wire the remaining proceeds into the Korean account of a third entity, Sally S. Trading Company. S & G deposited the check into their bank (M & I) the same day they received it, directing $2,500.00 to be deposited into their general operating bank account and $195,070.00 into the Interest on Lawyer's Trust Account (IOLTA) they maintained on behalf of their clients. Upon S & G's request, on December 20, 2007, M & I wired $195,030.00 to the Industrial Bank of Korea. Shortly after the wire was sent, it became apparent that the check was fraudulent. However, efforts to recall the wire transfer or otherwise reclaim the funds were unsuccessful.

M & I charged back the credit from the December 19th deposit to S & G's IOLTA. Since the IOLTA, which had $11,941.95 of funds belonging to S & G's clients, had an insufficient balance to cover the deficit, M & I then demanded that S & G make good

on the deficit of $178,968.56. S & G was unable to do so, and on February 26, 2008, M & I filed a petition alleging that S & G had breached its bank account agreement with the bank and that Neil Sader (Sader) and Gregory Garvin (Garvin) had breached their individual guaranties of the account. In their responsive pleading filed on April 7, 2008, the defendants counterclaimed, asserting in four alternatively pled counts that M & I had (1) impermissibly converted the IOLTA funds; (2) breached the document entitled "Rules For Deposit Accounts And Funds Availability Policies" by making the funds from the fraudulent check available too early; (3) breached the guaranty agreement by "setting-off" funds that were held in trust; (4) negligently failed to follow M & I's "Rules For Deposit Accounts And Funds Availability Policies" and, consequently, negligently failed to ascertain that the deposited check was fraudulent and negligently failed to alert S & G of common check scams such as the one at issue.

M & I filed its reply to the counterclaim on May 9, 2008, and included an affirmative defense alleging the right to submit the counterclaim to arbitration.[1] However, M & I did not move to compel arbitration at that time. From May 9, 2008, to April 20, 2009, the case moved forward with no demand by M & I to compel arbitration. During this period of time, M & I amended its answer with leave of the trial court, designated expert witnesses, objected to S & G's expert witness designation, and the litigants on both sides of this dispute propounded interrogatories, document requests, and deposition notices. On February 4, 2009, the original trial date

---

1. M & I states that the reason M & I sought to compel arbitration as to the counterclaim and not as to the original petition was because the claimed arbitration agreement only related to

alleged breach of contract between M & I and S & G and not the guaranty agreement between Sader or Garvin in their individual capacities as guarantors.

of April 13, 2009, was continued and a jury trial was scheduled for August 24, 2009.

On April 20, 2009, S & G requested leave to file an amended counterclaim that asserted a claim for punitive damages. Nine days later, on April 29, 2009, M & I filed a demand for arbitration with the American Arbitration Association (AAA). On June 3, 2009, the trial court initially denied S & G's motion for leave to file an amended counterclaim. On June 6, 2009, S & G filed a motion to dismiss, or in the alternative, application to stay arbitration. On June 11, 2009, S & G filed a motion for reconsideration, again seeking leave of court to amend the counterclaim. On June 16, 2009, M & I filed a motion to stay litigation of S & G counterclaims and compel arbitration. On June 24, 2009, M & I filed a motion for summary judgment as to its originally filed petition. Over the next two months, both parties filed numerous legal suggestions in support and in opposition to the pending motions of the respective parties. On August 6, 2009, S & G filed legal suggestions in support of the motion to dismiss arbitration in which S & G argued that it had never agreed to the arbitration agreement that M & I was attempting to compel, and as such, the alleged arbitration agreement was unenforceable. On August 21, 2009, the trial court held a hearing on the various motions before it. M & I presented no evidence supporting an express agreement to arbitrate between the parties and, instead, argued that S & G's counterclaim allegations constituted a judicial admission of the existence and enforceability of the arbitra-tion agreement. The trial court issued an order denying M & I's motion for summary judgment and motion to compel arbitration and granting S & G's motion to dismiss arbitration[2] and motion for reconsideration. Accordingly, the trial court granted leave to S & G to amend their counterclaim. M & I timely filed this interlocutory appeal, and S & G filed a motion to dismiss the appeal with this court, arguing that this court lacks jurisdiction.

## Jurisdiction

◼ Prior to addressing the propriety of the trial court's order granting S & G's motion to dismiss arbitration, we must first determine whether this interlocutory appeal is properly before this court. "In Missouri, the right to appeal is purely statutory, and where a statute does not confer the right to appeal, no appeal can exist." *State v. Moad*, 294 S.W.3d 83, 86 (Mo.App. W.D.2009). Section 435.440.1(1)[3] and (2) permit appeal of an interlocutory order "denying an application to compel arbitration made under section 435.355," or "granting an application to stay arbitration made under subsection 2 of section 435.355," or where "the substantive effect" of the order results in denying or staying arbitration.

◼ S & G argues that section 435.440 does not confer the right to submit an interlocutory appeal in this case because the trial court order did not deny "an application to compel arbitration" or grant an order "to stay arbitration." S & G argues that because the trial court's order granted their motion to dismiss the arbi-

---

**2.** The trial court's order specifically stated that:

[T]he [trial court] finds that the arbitration clause in the document delineating the bank's rules is not sufficient to constitute a contract between the parties with regard to the arbitration of disputes as it was never agreed to or bargained for by Defendants.

Even if this were not the case, Plaintiff has waived their arbitration argument by engaging in extensive discovery relating to the issues involved in this case.

**3.** All statutory references are to RSMo 2000 unless otherwise noted.

tration and did not deny an action to compel arbitration or order arbitration stayed, the statute is not implicated and an interlocutory appeal is not proper. In essence, S & G is arguing that it is the label a trial court uses in denying a motion to compel arbitration that is controlling and not the effect of the order. We disagree. Though the interlocutory order being appealed to this court is styled as a motion to dismiss arbitration, the character of a pleading is " 'determined by its subject matter and not its designation.' " *Moad*, 294 S.W.3d at 86 (quoting *Johnson v. Johnson*, 112 S.W.3d 460, 464 (Mo.App. W.D.2003)). We therefore look to the substance of the pleading to ascertain its nature. *Weber v. Weber*, 908 S.W.2d 356, 359 (Mo. banc 1995). The substantive effect of the trial court granting S & G's motion to dismiss arbitration was to deny M & I's claimed right of arbitration. Section 435.440.1 therefore provides M & I with a statutory right of interlocutory appeal. S & G's motion to dismiss this appeal is denied.

### Standard of Review

Appellate review of a trial court's order denying arbitration is a question of law, which we review *de novo*. *Lawrence v. Beverly Manor*, 273 S.W.3d 525, 527 (Mo. banc 2009). The substantive law of this state governs the issues of the existence, validity, and enforceability of any purported arbitration contract. *Morrow v. Hallmark Cards, Inc.*, 273 S.W.3d 15, 21 (Mo.App. W.D.2008) (citing *State ex rel.*

*Vincent v. Schneider*, 194 S.W.3d 853, 856 (Mo. banc 2006)). The usual rules of state contract law and canons of contract interpretation apply to the issue of whether or not the parties have entered into an enforceable agreement to arbitrate. *Id.* (citing to *Triarch Indus., Inc. v. Crabtree*, 158 S.W.3d 772, 776 (Mo. banc 2005)).

### Arbitration Cannot Be Compelled in the Absence of an Agreement to Arbitrate

When faced with a motion to compel arbitration, we must consider three factors. First, we must "determine whether a valid arbitration agreement exists." *Nitro Distrib., Inc. v. Dunn*, 194 S.W.3d 339, 345 (Mo. banc 2006). Second, if a valid arbitration agreement exists, we must determine "whether the specific dispute falls within the scope of the arbitration agreement." *Id.* Third, if a valid arbitration contract exists, and if the subject dispute is within the scope of the arbitration provision, then we must determine whether the arbitration agreement is subject to revocation under applicable contract principles. *See Kansas City Urology, P.A. v. United Healthcare Servs.*, 261 S.W.3d 7, 11, 14 (Mo.App. W.D.2008).[4]

The first factor, whether or not a valid arbitration agreement exists, is dispositive of this appeal.[5] "Arbitration is a matter of contract, and a party cannot be required to arbitrate a dispute that it has not agreed to arbitrate." *Dunn Indus. Group, Inc. v. City of Sugar Creek*, 112

---

**4.** It is in evaluating this third factor that our courts discuss whether a contract should be revoked because it is procedurally and substantively unconscionable. However, the issue of whether an arbitration contract should be revoked because it is unconscionable is never reached if the agreement is determined under the first factor to lack the necessary indicia of a valid and enforceable contract.

**5.** All of M & I's points on appeal argue that (1) there was an agreed-upon and enforceable contract of arbitration between the parties; and (2) M & I did not waive its right of arbitration. Because we conclude that the trial court properly concluded that there was no evidence of an agreement to arbitrate, we conclude that there is not, in fact, an enforceable contract of arbitration, and we need not reach any issues relating to waiver.

S.W.3d 421, 435 (Mo. banc 2003). "Absent a contract to arbitrate, no party has a unilateral right to impose on another party a requirement of arbitration as the sole procedure for dispute resolution." *Morrow*, 273 S.W.3d at 21. "It is a firmly established principle that parties can be compelled to arbitrate against their will only pursuant to an agreement whereby they have *agreed* to arbitrate claims." *Id.*

■ Motions to compel or stay arbitration are tried in summary proceedings, section 435.355.2, and " '[w]ithout the usual formalities [and] without a jury.' " *Nitro*, 194 S.W.3d at 351 (quoting BLACK'S LAW DICTIONARY 1476 (8th ed.1999)). In such summary proceedings where one of the parties disputes the existence of the contract of arbitration, the parties may present evidence, including but not limited to documents, affidavits, and deposition transcripts to resolve the factual disputes. *Id.* at 352. After one party has challenged the existence of an enforceable agreement to arbitrate, the trial court must determine that issue based upon the evidence before it. *Creech v. MBNA Am. Bank, N.A.*, 250 S.W.3d 715, 717–18 (Mo.App. S.D.2008).

The problem with M & I's position in this case is that M & I has failed to present any evidence that an agreement to arbitrate was affirmatively entered into between M & I and S & G. Instead, M & I places all of its "eggs in one basket"— namely, M & I claims that S & G has judicially admitted the existence of a valid and binding arbitration agreement in its pleadings. We conclude, however, that S & G's pleadings do not constitute a judicial admission, and consequently, M & I's failure to present any evidence of an agreed-upon contract to arbitrate at the August 21, 2009 hearing is fatal to its claimed right of arbitration, and the trial court properly concluded that "a contract between the parties with regard to the arbitration of disputes . . . was never agreed to or bargained for by [S & G]."

## M & I Rules for Deposit Accounts and Funds Availability Policies

It is undisputed that on or about January 31, 2008 (i.e. *after* the overdraft incident), M & I's legal counsel forwarded S & G a copy of a document entitled "Rules For Deposit Accounts And Funds Availability Policies." The only testimonial evidence that the trial court had from S & G's representative was that the representative did not recall receiving this document prior to January 31, 2008. It is undisputed that the document was not signed by any representative of S & G. The document itself refers to "Rev (11/07)," implying that it did not even come into existence until one month prior to the overdraft incident. The document is ten pages in length, and the font size of the typewritten text appears to be a nine-point font size or less.[6] Paragraph 1.c of the document is an "Arbitration Disclosure," and paragraph 29 of the document describes the terms of arbitration. There was no testimonial evidence, submitted by way of affidavit or deposition transcript of any witness, stating that the document was forwarded to S & G *before* the overdraft incident or that the terms of arbitration had been expressly agreed upon by S & G. There was, in

---

**6.** We do not reach the issue of whether the Missouri Uniform Arbitration Act (MUAA) or the Federal Arbitration Act governs issues relating to arbitration notice requirements in the case below, but find it noteworthy that section 435.460 of the MUAA requires the arbitration notification to be in a ten-point font size and in all capital letters placed adjacent to, or above, the space provided for signatures. Were the subject provision to be governed by the MUAA, it clearly would fail. This determination, however, is not necessary to our ruling today.

fact, no other documentary evidence submitted to the trial court in any fashion demonstrating that S & G had expressly agreed to the terms of arbitration or that it had notice of the purported terms of arbitration prior to the overdraft incident.

This document, however, is the document relied upon by M & I to assert its right to compel arbitration (1) fourteen months after filing its original petition against S & G, Sader, and Garvin; (2) fourteen months after pursuing and responding to discovery and expert witness designations that related to issues directly and exclusively covered by M & I's alleged right of arbitration; and (3) approximately two months after the case had been set for trial—for the second time.[7]

### Judicial Admission

M & I concedes that it did not present any evidence to the trial court that the parties had expressly agreed to the purported contract of arbitration, though at oral argument M & I's counsel indicated that M & I possessed such evidence at the time of the August 21, 2009 hearing and could have presented such evidence had it chosen to do so. Instead, M & I argues that S & G's pleadings constitute a judicial admission that S & G had agreed to the contract of arbitration. We disagree.

In their counterclaim, S & G, Sader, and Garvin pled four alternative counts of relief against M & I. Count I pled conversion and Count III pled breach of an alleged guaranty agreement between the parties. Counts II and IV alternatively pled that M & I breached or negligently failed to follow the document entitled "Rules for Deposit Accounts and Funds Availability Policies." The only paragraph of the Counterclaim that even refers to the term "contract" is

paragraph 34 of the Counterclaim, to which M & I's response was: "M & I denies the allegations contained in Paragraph 34 of the Counter–Claims." M & I's only other references (in its Reply to Counterclaim) to the document that is now purported to constitute the expressly agreed-upon contract of arbitration are found at paragraphs 33 and 58 of its Reply to Counterclaim, to-wit:

33. The terms of the Funds Availability Policy for Business Checking Accounts document speak for themselves and are not fully stated in Paragraph 33 of the Counter–Claims. M & I denies any allegations contained in Paragraph 33 of the Counter–Claims that are not inconsistent with the terms of the document.

. . . .

58. All the Counter–Claims are subject to arbitration pursuant to paragraph 29 of the Funds Availability Policy for Business Checking Accounts agreement between M & I and S & G. The Counter–Claims should be stayed pending disposition of all arbitrable claims pending in this action pursuant to that provision.

These pleadings do not constitute a judicial admission for several reasons.

First, a judicial admission requires a specifically pled allegation by one party that is admitted by the other party. *See Creech,* 250 S.W.3d at 717; *J.H. Berra Paving Co. v. City of Eureka,* 50 S.W.3d 358, 362 (Mo.App. E.D.2001). That has not occurred in the pleadings of the present case. Although S & G pled the existence of a contract that was breached by M & I, M & I denied these allegations in its response to this allegation of the coun-

---

7. Though we do not reach the issue of waiver, it is no coincidence that the trial court expressly concluded that an alternative basis for denying arbitration in its order was that M & I had waived any right it had to seek to compel arbitration.

terclaim. M & I could have "admitted" that a contract existed while denying that it breached the contract, but M & I did not do so. Instead, M & I denied all of the allegations relating to the paragraph that alleged the existence of a contract and a breach thereof. Next, in paragraph 33 of its Reply to Counterclaim, M & I refers to the "Funds Availability Policy for Business Checking Accounts" as a "document," not as an arbitration "agreement." Finally, the paragraph 58 affirmative defense refers to the arbitration "agreement" as the "Funds Availability Policy for Business Checking Accounts," not the "Rules for Deposit Accounts and Funds Availability Policies" that it now asserts is the arbitration "agreement." In fact, there is a section on pages 9–10 within the "Rules for Deposit Accounts and Funds Availability Policies" document titled "Funds Availability Policy for Business Checking Accounts," but that section has no arbitration provision. In short, these pleadings are anything but a clear allegation of the existence of an agreed-upon arbitration contract and a corresponding admission of the existence thereof.

▮ Second, the context of the pleadings of S & G's Counterclaims are such that Counts II and IV are alternatively pled Counts, one alleging the document in question is a contract that was breached and the other alleging that the same document is nothing more than a bank policy that M & I negligently failed to follow. Even in the breach of "contract" Count, S & G never alleged that the terms of the "contract" were expressly agreed to. Instead, the "contract" is prefaced as a "document" that was provided to S & G by M & I's counsel *after* the overdraft event. The sum total of the Counterclaims was that S & G had genuine doubt as to the facts and the effect thereof, and hence, S & G pled multiple counts of relief in the

alternative. "Rule 55.10 clearly contemplates that different and inconsistent theories of liability may be pleaded." *Mays–Maune & Assocs., Inc. v. Werner Bros., Inc.,* 139 S.W.3d 201, 206 (Mo.App. E.D. 2004). *See also Trien v. Croasdale Constr. Co.,* 874 S.W.2d 478, 481 (Mo.App. W.D. 1994) ("[T]wo theories may of course be pleaded in the same petition, but at some point an election must be made."). " '[A]lternative fact allegations made in good faith and based on genuine doubt are not admissions against interest so as to be admissible in evidence against the pleader. The pleader states [the] facts in the alternative because he is uncertain as to the true facts, so that he is not 'admitting' anything other than his uncertainty . . . .' " *Mays–Maune,* 139 S.W.3d at 207 (quoting 29 AM. JUR.2d *Evidence* § 692 (1967)).

The pleadings in question do not rise to the level of a judicial admission by S & G that a valid arbitration contract existed. In addition, however, fifteen days before the hearing of August 15, 2009, S & G specifically filed legal suggestions in which S & G argued that "there is no contract in place that would require [S & G's] Counterclaim be submitted to arbitration." These same legal suggestions argued that the purported arbitration contract had not been agreed and consented to and that the document containing "The Rules" was nothing more than "the understanding or supposition of one of the parties." Ultimately, S & G argued that "in order to determine whether the 'arbitration provision' relied upon by M & I is binding upon the parties, the Court must first and foremost determine whether 'the Rules' are, in fact, a contract between the parties."

In short, S & G had not judicially admitted the existence of a valid arbitration contract and, instead, argued to the contrary. M & I knew this prior to the hearing of August 21, 2009, and chose not

to introduce any evidence that such an arbitration contract existed. Because there is no evidence to support the existence of a valid arbitration contract between the parties, the trial court did not err in concluding that such an arbitration contract between the parties did not exist.

M & I's points on appeal are, therefore, denied.

### Conclusion

There was no evidence of the existence of a valid arbitration agreement between the parties, and accordingly the trial court did not err in granting the motion to dismiss arbitration below. M & I's interlocutory request for appellate relief with this court as to the trial court's order of August 21, 2009, is denied, and this cause is remanded for further proceedings consistent with our ruling today.

JAMES M. SMART, JR., Presiding Judge, and CYNTHIA L. MARTIN, Judge, concur.