STATE of Missouri, Appellant,

v.

Mark WOODWORTH, Respondent.

No. WD 76293.

Missouri Court of Appeals,
Western District.

Nov. 12, 2013.

Theodore Bruce, Jefferson City, MO, for Appellant.

Robert Ramsey, Glen Carbon, IL, for Respondent.

Michele Puckett–Burkhead, Cameron, MO, Co–Counsel for Respondent.

Before Division Two: THOMAS H. NEWTON, P.J., ALOK AHUJA, and GARY D. WITT, JJ.

THOMAS H. NEWTON, Presiding Judge.

The State appeals the trial court's order excluding specific evidence for the retrial

of Mr. Mark Woodworth. Mr. Woodworth filed a motion to dismiss. The order is not the proper subject of an interlocutory appeal. Hence, we dismiss the State's appeal.

### Factual and Procedural Background

In November 1990, Mr. Lyndel and Ms. Catherine Robertson were shot at home in rural Livingston County. *State ex rel. Woodworth v. Denney*, 396 S.W.3d 330, 333 (Mo. banc 2013) (*Woodworth II*).[1] Ms. Robertson was killed, and Mr. Robertson survived the shooting. *Id.* Mr. Woodworth, who was sixteen years old at the time, lived with his family across the street from the victims. *Id.* Mr. Woodworth's father was in a farming partnership with Mr. Robertson. *Id.* Almost three years after the shooting, the State charged Mr. Woodworth with second-degree murder and other crimes; he was certified as an adult. *Id.* at 335.

After a jury trial, Mr. Woodworth was convicted of the crimes and sentenced; he appealed. *Id.* On direct appeal, we reversed the convictions and remanded the case for a new trial. *State v. Woodworth*, 941 S.W.2d 679, 684 (Mo.App. W.D.1997) (*Woodworth I*). We found the trial court erred by excluding evidence that the boyfriend of the victims' daughter had motive and opportunity to commit the crimes, and concluded that the exclusion was prejudicial because of the weakness of the State's case. *Id.* at 690. After reversal, the State retried Mr. Woodworth for the crimes, and he was again convicted and sentenced. *Woodworth II*, 396 S.W.3d at 336. Mr. Woodworth's second direct appeal was de-

nied. His requests for post-conviction relief and a writ of habeas corpus under Rule 91.01, were denied in the trial court and in this court. *Id.*

Subsequently, Mr. Woodworth sought habeas corpus relief in the Missouri Supreme Court. *Id.* The supreme court ordered a special master to hear evidence on the claims raised in the habeas petition, which alleged a number of *Brady*[2] violations discovered after trial. *Id.* After seven hearings and review of a "voluminous file," the special master determined that the State had committed prejudicial *Brady* violations and that the effect of those violations "undermined the master's confidence in the verdict." *Id.* The special master recommended that the convictions be set aside, and the supreme court, adopting the special master's recommendation, vacated Mr. Woodworth's convictions. *Id.* at 347.

The supreme court found that the special master's hearings revealed that Mr. Robertson had hired Mr. Terry Deister, a private investigator, to investigate the shootings; that Mr. Deister had a prior relationship with the deputy in charge of investigating the case; and that Mr. Deister "was provided unfettered access to the sheriff's files regarding the Robertson case." *Id.* at 334. It referenced additional findings from the hearings related to Mr. Deister's involvement in the case that further undermined confidence in the verdict. *Id.* at 344–45, 347. These findings included that Mr. Deister "was clandestinely given access to the Sheriff's investigative file [including the Woodworth pistol and the bullet fragments]," which constituted "seri-

---

1. The facts in this case have been detailed in both *State v. Woodworth*, 941 S.W.2d 679, 684–86 (Mo.App.W.D.1997) (*Woodworth I*) and *State ex rel. Woodworth v. Denney*, 396 S.W.3d 330, 333–35 (Mo. banc 2013) (*Woodworth II*), so we set forth only those facts necessary for the disposition of this appeal.

2. A *Brady* violation occurs when the state willfully or inadvertently withholds exculpatory evidence from the defendant and the defendant is thereby prejudiced. *Woodworth II* at 338.

ous investigative misconduct." *Id.* at 347[3] The Missouri Supreme Court noted that the special master did not address *Brady* violations concerning these issues because of an apparent stipulation as to the chain of custody, and that the stipulation as to the chain of custody would "presumably ... not recur in any future retrial." *Id.* at 346 n. 10.

On remand, the State decided to retry Mr. Woodworth for the shootings. Mr. Woodworth filed a pretrial "Motion to Suppress Evidence and to Bar the State's Ballistics and Fingerprint Expert's Testimony." The State responded, arguing that Mr. Woodworth's motion was "not a motion to suppress at all," but was rather "an argument that the State cannot prove chain of custody of certain physical evidence." Mr. Woodworth filed a motion to amend by interlineation, asserting that it should have been titled as a "Motion In Limine to Exclude and/or Suppress Evidence and to Bar the State's Ballistics and Fingerprint Experts' Testimony."

On March 18, 2013, the trial court held a hearing on the motion. Mr. Woodworth presented the testimony of several witnesses, including Mr. Daniel E. Jackson, an expert in crime scene investigation and ballistics examination. Mr. Jackson testified to recording irregularities for the bullet removed from Mr. Robertson. Over the State's objection, Mr. Jackson testified that there was conflicting evidence as to whether the Robertson bullet was received in the hospital by Mr. Deister, the private investigator, or by a Deputy Sheriff. Mr. Jackson further testified that a number of gaps were in the chain of custody of the Robertson bullet and that the bullet and the alleged Woodworth revolver had been in Mr. Diester's possession, which was for-

bidden because a private citizen should not have possession of evidence absent a subpoena.

Mr. Woodworth also presented the testimony of Mr. Steve Cox, who had been Sheriff of Livingston County since 2001. Sheriff Cox testified that he reopened the case after becoming Sheriff because of concerns about the past investigation. He stated that if one of the deputies gave evidence to a private investigator, the deputy would probably be released from duty and subjected to discipline. He further testified that from the special master's proceedings, it became apparent that Mr. Deister:

> was working with the chief deputy of the Livingston County Sheriff's Office at that time, and they were secretly moving items out of the sheriff's office related to the report or investigation without the knowledge or hiding that knowledge from the Sheriff and the highway patrol. And Mr. Deister was the one that took the infamous bullet to England, and I don't believe there is a chain of custody showing that he did that.

After a request from Mr. Woodworth and no objection from the State, the trial court took judicial notice of the supreme court file in *Woodworth II* and the record of the special master's proceedings. The State presented no witnesses; but the State filed a post hearing brief asserting again that no suppression issue existed.

Subsequently, the trial court granted Mr. Woodworth's motion in part. It ruled "that any forensic evidence, examination, or information regarding the 'Robertson bullet' and the 'Woodworth weapon' after and including August 31, 1992, is barred from being presented in any trial, proceed-

---

3. The special master specifically found Mr. Deister to be uncredible, both in deposition and live testimony.

ing, or hearing of a criminal nature involving [Mr.] Woodworth." The State appeals the order.

## Legal Analysis

Mr. Woodworth has filed a motion to dismiss the appeal, asserting that the State was not authorized to appeal the trial court's interlocutory order. In response, the State argues that the order had the "substantive effect" of suppressing evidence and was appealable pursuant to section 547.200.[4] The motion was taken with the case, and is hereby granted.

■ Generally, the State's challenge to a trial court's interlocutory order should be through a writ of prohibition rather than an appeal. *See State v. Moad*, 294 S.W.3d 83, 86 (Mo.App.W.D.2009). The right of appeal in Missouri is conferred only by statute "and where a statute does not confer the right to appeal, no appeal can exist." *Id.* Section 547.200 provides in part: "[a]n appeal may be taken by the state through the prosecuting or circuit attorney from any order or judgment the substantive effect of which results in: ... (3) Suppressing evidence."

■ The right to appeal under section 547.200(3) is "linked directly" to the five bases for filing a suppression motion set forth in section 542.296. *See State v. Burns*, 339 S.W.3d 570, 571–72 (Mo.App. W.D.2011). Each ground for suppression under section 542.296.5 involves an illegal search and seizure. *Id.* Consequently, the State's right to appeal under section 547.200 "has been consistently circumscribed to those cases where illegally obtained evidence is at issue." *Id.* (quoting *State v. Puckett*, 146 S.W.3d 19, 24 (Mo. App.E.D.2004)).

■ An order suppressing evidence is not the same as an order excluding evidence based on a rule of evidence. *See State v. Dwyer*, 847 S.W.2d 102, 103 (Mo. App.W.D.1992). "Suppression is a term used for evidence which is not objectionable as violating any rule of evidence, but which has been illegally obtained." *Id.* The State's evidence may be admissible under all rules of evidence, but suppressed because of the illegal manner in which it was obtained. *Id.* "In essence, evidence that is excluded for procedural reasons or for violation of the rules of evidence or for any other reason not having its genesis in the argument that it was illegally obtained is not appealable by the State." *Moad*, 294 S.W.3d at 86. Thus, for example, where it is found that evidence was improperly disposed of or handled *after* it was obtained, this is not an appealable order of suppression, as it is not a ruling that the evidence was illegally obtained. *See Puckett*, 146 S.W.3d at 24; *Moad*, 294 S.W.3d at 87.

■ Here, in determining whether the State is appealing an evidentiary ruling or an order of suppression, it is inconsequential that Mr. Woodworth used the word "suppress" in titling the motion. *Burns*, 339 S.W.3d at 572. We view the subject matter and legal character of a pleading to determine its nature, not its denomination. *Id.*

■ More importantly, we determine the substantive effect of the order being appealed. *See* § 547.200. The trial court did not rule that the Robertson bullet and the Woodworth weapon were illegally obtained. Citing case law on chain of custody, the trial court found that Mr. Deister "took a major role in the investigation of the crime and received, took charge of, had in his possession, and transported vital and

---

4. Statutory references are to RSMo.2000.

important items of evidence." It found more troubling that there was a lack of documentation of Mr. Deister's "control and dominion over certain items of evidence." It specifically found that there was "an egregious, flagrant, [and] cavalier disregard of evidentiary procedures and process with regard to the 'Robertson bullet' and the 'Woodworth weapon'" after Mr. Robertson's surgery in August 1992. It granted Mr. Woodworth's motion in part by ruling "that any forensic evidence, examination, or information regarding the 'Robertson bullet' and the 'Woodworth weapon' after and including August 31, 1992, is barred from being presented in any trial, proceeding, or hearing of a criminal nature involving [Mr.] Woodworth." It denied Mr. Woodworth's motion in all other respects. Thus, the order was based on rules of evidence; it was "not ... by virtue of an illegal search and seizure." *See Burns*, 339 S.W.3d at 572. "The trial court's order is tantamount to a ruling *in limine*," and such a ruling "is subject to change during the course of trial." *Id.*

The State relies on *State v. Eisenhouer*, 40 S.W.3d 916 (Mo. banc 2001) and *State v. Foster*, 959 S.W.2d 143 (Mo.App.S.D.1998) to contend that the trial court's order had the substantive effect of an order of suppression. These cases are inapposite. In *Eisenhouer*, the supreme court determined that the trial court's order quashing a subpoena to obtain communications from a church's elders about an alleged confession by the accused, had the substantive effect of suppressing evidence because quashing the subpoena prevented the State from obtaining the evidence based on constitutional rights. 40 S.W.3d at 919. The *Eisenhouer* court explicitly detailed the distinction between exclusion based on a substantive right and exclusion based on a rule of evidence, highlighting that "the mere exclusion of evidence based on a rule of evidence does not have the substantive

effect of a motion to suppress." *Id.* In *Foster*, the defendant requested that the State be barred from admitting the evidence of his refusal to submit to a breathalyzer test because his statutory right to contact an attorney before refusing had been violated. 959 S.W.2d at 146. The *Foster* court found that the issue before the trial court was whether the evidence was illegally obtained, and thus the State's interlocutory appeal was proper since the order had the substantive effect of suppressing evidence. *Id.* at 145.

Here, the State is not appealing the suppression of evidence; there was no ruling that the evidence was illegally *obtained.* Rather, the trial court barred admission of the evidence based on handling of the evidence. The State itself argues that "the trial court believed it should suppress evidence that was handled by a private investigator because it is illegal for a private investigator to handle evidence." The trial court's ruling was an evidentiary ruling, not an order of suppression, and is not subject to interlocutory appeal under section 547.200. *Puckett*, 146 S.W.3d at 24. While the State argues that its "appeal is made necessary, as is true with most appeals, because the trial court did not accept the State's position and, instead, issued an opinion contrary to the State's argument," the State's disagreement with the trial court's order does not make the order appealable. Consequently, we grant Mr. Woodworth's motion to dismiss the appeal.

**Conclusion**

The dismissal of the appeal, of course, does not leave the State without a remedy. The State may seek a writ of prohibition, which "is appropriate where there is an important question of law decided erroneously that would otherwise escape review." *Moad*, 294 S.W.3d at 88 (internal quotation

marks and citation omitted). That kind of request is not before this court, and we take no position on whether such a request should be granted. Therefore, we dismiss the State's appeal.

Ahuja and Witt, JJ. concur.