STATE ex rel. PEABODY COAL COMPANY and Peabody Development Company, Relators,

v.

Honorable Thomas C. CLARK, Judge, Circuit Court, Jackson County, Respondent.

No. 75565.

Supreme Court of Missouri, En Banc.

Oct. 26, 1993.

Lawrence C. Friedman, W. Stanley Walch, Dana E. Underwood, St. Louis, Spencer J. Brown, Philip R. Dupont, Kansas City, for relators.

George A. Barton, Scott K. Martinsen, Kansas City, for respondent.

ROBERTSON, Judge.

Relator, Peabody Coal Company brings this original action in prohibition to prevent discovery of certain documents it alleges are protected by the attorney-client privilege. The underlying suit is a civil proceeding. Respondent, the Honorable Thomas C. Clark, Circuit Judge for the Sixteenth Judicial Circuit, ordered Peabody to produce the documents under the crime-fraud exception to the attorney-client privilege. We granted our preliminary writ in prohibition to determine whether respondent exceeded his authority in applying the crime-fraud exception

in this civil case. For the reasons that follow we make our preliminary writ absolute.

## I.

Commerce Bank is the personal representative of the estates of Gladys Kelce and Grant Stauffer ("the estates"). Commerce brought the underlying action to recover sums it alleges are due the estates from Peabody Coal Company ("Peabody") under the terms of the 1946 royalty agreement (the "royalty agreement") between Peabody and holders of mineral rights including Stauffer and Kelce's deceased husband. The agreement required Peabody to pay royalties of five percent of the "gross realization F.O.B. the mine" to Kelce and Stauffer for all coal extracted from the defined "boundary area."

Beginning in the 1970s, the federal government and the State of Kentucky imposed taxes on the production of coal from mines. Peabody passed these taxes on to its customers, increasing the gross payment Peabody realized for its coal. Peabody continued to pay royalties to Kelce and Stauffer based on the pre-tax calculations. These payments did not account for the taxes Peabody passed through to its customers. Had Peabody included the taxes in its gross realization calculation, Kelce and Stauffer would have received higher royalties.

Commerce's petition included three related fraud claims based on Peabody's conduct. Specifically, the petition alleged that Peabody had assigned its mining rights within the area to Pyramid Mining Company, in return for mining royalties. Commerce avers that Peabody fraudulently concealed these Pyramid royalties from Kelce and Stauffer and did not include these payments in the gross realization figures that it paid. Second, Commerce alleged that Peabody fraudulently concealed its failure to include taxes in the gross realization and, as a result, the estates did not receive the true gross realization royalty for which the royalty agreement called. Third, Commerce alleged that, in 1985, Peabody obtained a royalty reduction from the estates but did not disclose either that it had assigned some of the mining rights to Pyramid or that it calculated royalty payments on something other than gross realization.

Other parties to the royalty agreement brought suit in federal court in Kentucky on similar claims. As part of the discovery in the federal suit, plaintiffs sought production of relevant Peabody internal memoranda relating to issues in the lawsuit. Peabody produced most of the requested material but claimed the attorney-client privilege as to approximately 24 documents.

Commerce, aware of the proceedings in Kentucky, sought to compel production of the documents Peabody claims are privileged in its lawsuit in Missouri. For the most part, these documents concern the written legal advice provided Peabody by its attorneys on settlement negotiations relating to threatened litigation by the Beaver Dam Coal Company against Peabody. Peabody had calculated its royalty payments to Beaver Dam in the same way it calculated payments to the estates.

Respondent appointed a special master pursuant to Rule 62.01. Peabody produced the disputed documents for the master's *in camera* review. The master ruled that all the documents contained confidential attorney-client communications. The master also found that the documents related to the gross realization issue and did not concern the Pyramid Mining issue.

The master decided that Peabody had neither a duty to disclose its settlement with Beaver Dam to Kelce and Stauffer in 1979 nor a duty to inform Kelce and Stauffer that it had not paid them according to the new, tax-included gross realization figures. The master reasoned that Peabody was "not attempting to actively [sic] take advantage, but merely continuing to report to [the estates] as they had done for years." After reviewing the documents, the master held that Commerce did not make a sufficient showing to vitiate the attorney-client privilege.

However, the master determined that Peabody might have had a duty to volunteer information about the Beaver Dam settlement six years later, when Peabody renegotiated its new royalty rates with the Kelce and Stauffer estates through Commerce in 1985.

In the master's opinion, Peabody had a duty to disclose the 1979 settlement in 1985. Its failure to do so provided "sufficient grounds to conclude that the fraud exception ... should be applied." The master recommended that the trial court apply the crime-fraud exception to pierce the attorney-client privilege and render the documents relating to the Beaver Dam settlement discoverable.

Peabody objected to the master's findings. Respondent overruled the objections and ordered the documents produced. Peabody filed its petition for a writ of prohibition.

## II.

### A.

■ This Court has spoken clearly of the sanctity of the attorney-client privilege.

> As long as our society recognizes that advice as to matters relating to the law should be given by persons trained in the law—that is, by lawyers—anything that materially interferes with that relationship must be restricted or eliminated, and anything that fosters the success of that relationship must be retained and strengthened. The relationship and the continued existence of the giving of legal advice by persons accurately and effectively trained in the law is of greater societal value ... than the admissibility of a given piece of evidence in a particular lawsuit. Contrary to the implied assertions of the evidence authorities, the heavens will not fall if all relevant and competent evidence cannot be admitted.

State ex rel. Great American Ins. Co. v. Smith, 574 S.W.2d 379, 383 (Mo. banc 1978). Nevertheless, this Court has not held that the attorney-client privilege is absolute, recognizing a crime-fraud exception to the attorney-client privilege for underlying criminal conduct in Gebhardt v. United Railways Co. of St. Louis, 220 S.W. 677, 679 (Mo.1920). There, the plaintiff claimed that she suffered an injury when a street car on which she was riding ran off the track. She consulted an attorney, Charles Fensky, and admitted to Fensky that she was not on the street car when it jumped the track. The attorney refused to prosecute her tort claim further.

She retained a second attorney who brought the case to trial. At trial, plaintiff testified that her injuries resulted from her status as a passenger on the street car when it jumped the track. The street car company called Fensky as a witness. Plaintiff objected claiming that the attorney-client privilege prohibited Fensky from testifying. The trial court overruled the objection and permitted Fensky to testify. On appeal, this Court held:

> We have no doubt that the testimony of the witness Fensky was entirely proper. It is true that after a crime has been committed, the accused or guilty person may freely consult and even disclose his guilt to his attorney, in order to prepare his defense. Under such circumstances, the law puts the seal of secrecy upon such communications. But ... a person [cannot] employ an attorney for the purpose of aiding and abetting him in the commission of a future crime or fraud, and thereby seal the lips of his lawyer to secrecy and thus prevent the exposure or detection of such crime or fraud....

Id. The court further said:

> [I]t was the duty, of Attorney Fensky, when he found, upon examining his client before the trial, that the case ... could not be successfully maintained without perjury, ... to prevent the consummation of the contemplated crime and fraud by testifying to the facts as related to him by the plaintiff. Such communication was not privileged....

Id. See also Burger v. Crocker, 392 S.W.2d 640 (Mo.App.1965) (plaintiff's attorney's testimony admissible on issue of plaintiff's suborning perjury), and Jafarian–Kerman v. Jafarian–Kerman, 424 S.W.2d 333 (Mo.App. 1967) (address of father who kidnapped child and left the United States obtained from letters sent to father's attorney not privileged). In each of these cases, the court relied on an underlying crime to vitiate the attorney-client privilege.

In one case, Dickey v. Johnson, 532 S.W.2d 487 (Mo.App.1975), the court of appeals applied the crime-fraud exception to the attorney-client privilege in a civil context. This Court has not ruled whether the excep-

tion applies in a civil context. Although that is an important question, we need not decide it in this case. As the discussion following will show, Commerce has failed to meet the requirements for invoking the crime-fraud exception in any event.

### B.

■ We have considered the cases from other jurisdictions recognizing the crime-fraud exception in a civil context. Those cases, read together with Missouri cases applying the exception where there is underlying criminal activity, require the party seeking to discover the privileged information to meet a two-part test. First, the seeking party must make a prima facie showing that the privileged party has committed a crime or fraud. Second, the seeking party must demonstrate that the privileged information bears a direct and contemporaneous relationship to the crime or fraud alleged. *See, e.g., Gebhardt, supra; Jafarian–Kerman, supra; Ward v. Succession of Freeman,* 854 F.2d 780, 790 (5th Cir.1988) ("the party challenging the privilege must (1) make an independent prima facie case that a crime has been committed, and (2) then demonstrate that the privileged information bears a relationship to the alleged crime or fraud."), and *Pritchard–Keang Nam Corp. v. Jaworski,* 751 F.2d 277, 281 (8th Cir.1984) ("disclosure is not appropriate without a 'prima facie showing that the legal advice obtained was obtained in furtherance of illegal or fraudulent activity' [citation omitted]. Timing is critical, for the prima facie showing requires that the 'client was engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel to further the scheme.' [citation omitted]").

Although we expressly reserve the question whether Missouri law recognizes a crime-fraud exception to the attorney-client privilege in civil cases for another day, we believe the two-part test gleaned from the precedent provides the appropriate framework within which to test Commerce's claim here.

■ For purposes of the first part of the test, prima facie evidence of fraud or a crime exists when the seeking party puts forth that "quantum of evidence that suffices for proof of a particular fact until the fact is contradicted by other evidence." Black's Law Dictionary, 1190 (6th ed. 1990). Commerce's claim to the privileged documents stands on bare averments of fraud. The trial court's order appointing the master to examine the privileged material failed to require a prima facie showing of fraud.[1] Instead, the trial court appointed the master on a showing that Peabody's conduct was "perhaps" fraudulent. Thus, on the record before the trial court, no legal predicate existed for appointing the master.

Second, even if Commerce had put forth prima facie evidence of fraud, legal advice given in 1979 is neither directly related to nor contemporaneous with actions taken in 1985. Commerce has not shown, and the master did not find after review of the documents, the direct and contemporaneous relationship between the legal advice given prior to 1985 and a plan to defraud Kelce and Stauffer.

### III.

■ Prohibition is an extreme remedy. It is appropriate in this case because the trial court exceeded its authority by ordering discovery of privileged material. Once the privilege is discarded and the privileged material produced, the damage to the party against whom discovery is sought is both severe and irreparable. The damage cannot be repaired on appeal. *See State ex rel. Noranda Aluminum, Inc. v. Rains,* 706 S.W.2d 861, 862–3 (Mo. banc 1986) (writ is appropriate where issue is wrongly decided by trial court, ag-

---

1. Even where the seeking party claims underlying criminal activity, the trial court must make the first determination of the propriety of appointing a master based on the evidence presented to it by the seeking party. Only after the seeking party has convinced the trial court that prima facie evidence of a crime or fraud exists, may the trial court appoint a master to review the privileged documents. The trial court should not review the documents itself; this procedure assures the litigants that the trial court will not see the documents unless the master recommends that the privilege should be vitiated. The final decision to breach the privilege lies with the trial court, not the master.

grieved party "may suffer considerable hardship" and there is no adequate remedy by appeal).

## IV.

The preliminary writ previously issued in this case is made absolute.

All concur.