Lisa White Hardwick, Judge
Tia Townsel appeals her convictions and sentences for voluntary manslaughter and armed criminal action. She contends the circuit court erred in: (1) allowing in-court identifications of her by two witnesses; (2) failing to grant a mistrial or order a new trial based on a juror's alleged nondisclosure of a hardship; and (3) allowing the State to use confidential documents to impeach a defense witness. For reasons explained herein, we find no error and affirm the judgment.
FACTUAL AND PROCEDURAL HISTORY
Townsel does not contest the sufficiency of the evidence to support her convictions. The evidence, in the light most favorable to the verdict, is that in the early morning hours of June 23, 2015, Townsel and Jermaine Collins were arguing at an apartment complex in Kansas City. Townsel hit Collins in the face with her fist. Collins responded by throwing a whiskey bottle at Townsel, but the bottle did not hit her. Townsel went into her apartment and emerged a short time later with a knife. She swung the knife at Collins, who ran backwards as Townsel made stabbing motions toward him.
While this was occurring, Mandy Donlan and her son, Michael (collectively, "the Donlans")[1] were walking their dogs at the apartment complex. Mandy heard Collins ask for help, then she saw Townsel make a stabbing motion at Collins. Collins collapsed in a grassy area near the parking lot. Mandy called 911 and told the operator that the woman who stabbed Collins was in the vicinity. Mandy then attempted to give CPR to Collins, who was bleeding and making gurgling sounds. As Mandy was attempting CPR, Townsel told her, "Mind your own fucking business." Townsel spit on Collins and kicked him. She also told Collins, "See, this is what you made me do," and that he had gotten what he deserved. After the police were called, Townsel claimed that she had acted in self-defense.
Mandy told the 911 operator that the attacker had cut herself while stabbing Collins. Police found two trails of blood around the parking lot. One blood trail ran from the parking lot to Townsel's apartment, while the other ran from the parking lot to the area where Collins's body was.
*735 An officer found Townsel in her apartment. The officer saw that Townsel's left hand was bleeding badly.[2] A bloody steak knife was found in her kitchen sink. Townsel was handcuffed, placed in an ambulance, and taken to the hospital.
Collins died from a single stab wound to his chest. He had defensive wounds to both of his hands and his left forearm. DNA testing matched blood on the blade of the steak knife found in Townsel's apartment to Collins. According to the DNA analyst, if Townsel had cut her hand on the blade, her DNA might not show up due to the amount of Collins's blood that was on the blade. A swab taken from the handle of the knife tested negative for blood, but the swab showed a mixture of Townsel's DNA and Collins's DNA, with Townsel being the major contributor to that mix.
The State charged Townsel, as a prior and persistent offender, with second-degree murder and armed criminal action. A jury trial was held. Townsel did not testify. She did, however, present testimony from a crime scene investigator about evidence collected from Townsel at the hospital. Townsel also offered the testimony of Kambria Williams, who was living at the apartment complex on the night of the crimes. Williams testified that Collins was arguing with a resident named Samantha Moore, who had testified for the State, and that Townsel was in her (Townsel's) apartment when Collins was stabbed. Williams testified that she did not see the stabbing take place. Williams was incarcerated with Townsel at the time of her testimony.
The jury found Townsel guilty of voluntary manslaughter, which was submitted as a lesser-included offense of second-degree murder, and armed criminal action. The court sentenced her as a prior and persistent offender to consecutive terms of thirty years in prison for voluntary manslaughter and ten years in prison for armed criminal action. Townsel appeals.
ANALYSIS
In Point I, Townsel contends the circuit court erred in allowing the Donlans to make in-court identifications of her. She argues that the in-court identifications were improper because they were made without prior out-of-court identifications that were reliable and not impermissibly suggestive.
Three days before trial began, Townsel filed a motion in limine requesting to prohibit the introduction of any in-court identification of her by the Donlans. She argued that an in-court identification was not permissible because the Donlans were unable to positively identify Townsel from a photograph that the police showed them on the night of the incident. Townsel attempted to have her motion heard on the morning of trial, which was March 6, 2017, but the court refused that request because it had previously advised the parties that all motions needed to be filed and heard at the pretrial conference, which was held on June 29, 2016.
During the State's case, Kansas City Police Officer Marviel Pringle testified that, after Townsel had been taken into custody and was being led out of her apartment, both Donlans identified Townsel as the "individual responsible" for the incident. Townsel did not object to this testimony.
*736 Later in the State's case, Mandy testified that she had seen a woman make a stabbing motion at Collins, who later fell to the ground. The prosecutor asked Mandy if she saw the person who did that to Collins in the courtroom. When Mandy said, "Yeah, I do," Townsel objected to the in-court identification on the basis that Mandy had been unable to identify Townsel from the photograph that the police had shown her at headquarters on the night of the incident. The court overruled the objection, and Mandy identified Townsel. On cross-examination, Townsel questioned Mandy about the fact that she could not identify Townsel from the photograph. Mandy explained that she could not identify Townsel from the picture the police showed her because Townsel's hair was different in the picture. Mandy noted that she was able to identify Townsel in person on the night of the incident.
Michael testified that, while his mother performed CPR on Collins, a woman carrying a knife came up to Collins, assaulted him, took his phone, and said, "See, this is what you made me do." After Michael talked to the police officers at the scene, he saw the police bring the woman out of her apartment and place her in an ambulance. Michael noted that, at that time, he pointed Townsel out to the police as the person who had hurt Collins. The prosecutor asked Michael if he saw that person in the courtroom. Michael responded, "Yes, ma'am." Townsel objected to the in-court identification on the basis that Michael had not been able to definitively identify the person responsible for the crimes when the police interviewed him at headquarters after the incident. The court overruled the objection, and Michael identified Townsel.
After the Donlans testified, Kansas City Police Detective Scott Emery testified that, when he interviewed the Donlans at headquarters after the incident, he showed each of them a single photograph of Townsel that was obtained from the Department of Revenue. Detective Emery described it as an older photograph and noted that Townsel's hair was significantly different in the photograph than it was on the night of the incident. Detective Emery reiterated that neither of the Donlans was able to identify Townsel from the photograph. In her motion for new trial, Townsel asserted that the court erred in overruling her objections to the Donlans' in-court identifications.
We review the circuit court's ruling on an objection to in-court identification testimony for an abuse of discretion. State v. Barriner , 210 S.W.3d 285, 296 (Mo. App. 2006). An abuse of discretion occurs when the ruling "is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." Id. We will uphold the court's ruling on the admissibility of evidence if it is sustainable under any theory. State v. Miller , 220 S.W.3d 862, 868 (Mo. App. 2007).
The circuit court uses a two-part test in determining whether to exclude an in-court identification of the defendant. Barriner , 210 S.W.3d at 296. "First, the defendant must show that the pretrial identification procedures employed were impermissibly suggestive." Id. If the court finds that they were impermissibly suggestive, "then the defendant must show that they were so suggestive that there was a substantial likelihood that the reliability of the identification evidence was called into question." Id. "While reliability is the linchpin in determining the identification testimony's admissibility, the defendant 'must clear the suggestiveness hurdle before procuring a reliability review.' " Id. at 296-97 (quoting State v. Vinson , 800 S.W.2d 444, 446 (Mo. banc 1990) ).
*737 Townsel contends that this test is not applicable because the Donlans did not make a pretrial identification of her. She relies on the fact that the Donlans could not identify her from the photograph that Detective Emery showed them at headquarters after the incident. Townsel argues that the real issue is whether the Donlans' in-court identifications of her were admissible in the absence of pretrial identifications.
Contrary to Townsel's assertion, the evidence shows that the Donlans did, in fact, each make a pretrial identification of her. Officer Pringle testified without objection that the Donlans identified Townsel after she had had been taken into custody and was being led out of her apartment. Officer Pringle's testimony was presented before either of the Donlans was asked to make an in-court identification. In her initial appellant's brief, Townsel does not acknowledge Officer Pringle's testimony and does not challenge those pretrial identifications as being the result of an impermissibly suggestive police procedure. In her reply brief, Townsel refers to the Donlans' pretrial identifications of her at the scene as "a suggestive showup ID." We have held, however, that a pretrial identification under similar circumstances was not the result of unduly suggestive police procedures. See Cothran v. State , 436 S.W.3d 247, 252 (Mo. App. 2014) (identification of defendant made while he was handcuffed, being taken out of a paddy wagon by officers, and after police had told the witnesses that someone was in custody for the robbery was not unduly suggestive).
Townsel's failure to establish that the Donlans' pretrial identifications of her were the result of impermissibly suggestive police procedures defeats her claim that the court abused its discretion in allowing their in-court identifications of her. Barriner , 210 S.W.3d at 297-98. Point I is denied.[3]
In Point II, Townsel contends the circuit court erred in failing to grant a mistrial or order a new trial after a juror failed to disclose a hardship. Voir dire and jury selection in this case occurred on Monday, March 6, 2017. During voir dire, the State asked the panel members about any hardships that would affect their service. Specifically, the State asked:
Everyone's got something else going on in your life. You haven't dropped everything in your life to become a juror in this case. You have a wide variety of family or work-related issues going on. Does anyone -- and sometimes we're going through things that are traumatic or upsetting. Any maybe in the middle of a personal, family illness, or your own illness, you may be in the middle of divorce, for instance, or something like that.
My question is, does anyone have anything going on in their life that would distract them from being a fair and impartial juror in this case?
Two female panel members responded. One stated that she was the primary caretaker for her elderly mother who was preparing to have surgery the following week. In response to follow-up questions, the panel member assured the court that she would be able to pay attention. The other panel member indicated that a loved one was due to go to trial in a similar case the next month and this caused her to have a *738 personal bias that she believed would impact her ability to be fair in this case.
The jury returned its verdict on Wednesday, March 8, 2017. After the jury was excused, the court asked to see one of the male jurors. The court later explained to counsel why it had spoken to this juror:
And just in case you all were wondering what I was talking to the juror about, found out he buried his wife on Saturday. His wife passed away. And I said, well, you certainly would not have had to have served. He said, no. But I said, well, that's above and beyond the call of civic duty, that's for sure.
Townsel did not respond to the court's comments about the juror and did not request any relief at that time. Likewise, Townsel did not include any claim of error regarding the juror's service in her motion for new trial. Therefore, review is for plain error only.
Plain error will be found only where the alleged error "demonstrates on its face substantial grounds for believing that manifest injustice or miscarriage of justice has occurred." State v. Biggs , 170 S.W.3d 498, 503 (Mo. App. 2005). Plain error relief is granted " 'when the alleged error so substantially affects the rights of the accused that a manifest injustice or miscarriage of justice inexorably results if left uncorrected.' " State v. Baumruk , 280 S.W.3d 600, 616 (Mo. banc 2009) (citation omitted). Not all prejudicial error is plain error, however. Id. Plain errors are only those errors that are " 'evident, obvious, and clear.' " Id. (citation omitted). Plain error relief is appropriate only if we find that the error resulted in manifest injustice or a miscarriage of justice. Id. at 607-08.
Townsel asserts that the court plainly erred by not sua sponte declaring a mistrial or ordering a new trial for juror nondisclosure based upon the juror's failure to disclose that his wife's funeral was held two days before the trial began. "In determining whether to grant a new trial for juror nondisclosure, the court must first determine whether a nondisclosure occurred at all and, if so, whether the nondisclosure was intentional or unintentional." State v. Johnstone , 486 S.W.3d 424, 433-34 (Mo. App. 2016) (quoting State v. Ess , 453 S.W.3d 196, 203 (Mo. banc 2015) ).
"A juror has a duty to answer all questions directed at him and the panel generally." Id. at 434 (citation omitted). "Conversely, a juror 'ha[s] no duty to respond to a question not directed to himself or the panel generally.' " Id. (citation omitted). "Nondisclosure can occur only after a clear question is asked during voir dire." Ess , 453 S.W.3d at 203.
The record does not indicate that a nondisclosure occurred. The question that Townsel contends should have prompted the juror to disclose his wife's recent funeral was: "[D]oes anyone have anything going on in their life that would distract them from being a fair and impartial juror in this case?" This question was not clear and unequivocal, because it called for a subjective answer. The question did not ask jurors to disclose simply whether they had a family, work-related, traumatic, or upsetting event going on in their life, but, rather, whether they had "anything going on in their life that would distract them from being a fair and impartial juror in this case. " (Emphasis added.) While the recent funeral of his wife certainly qualified as a traumatic or upsetting event in the juror's life, if the juror did not believe that his wife's recent funeral would distract him from being a fair and impartial juror in this case, then he was under *739 no duty to respond to the question.[4]
Although Townsel contends that the recent funeral of the juror's wife prevented him from listening to the evidence at trial, it is equally likely that the juror listened and focused more intently on the evidence to block out thoughts of his loss. Townsel's contention that the juror's wife's recent funeral necessarily prevented him from focusing on the evidence is not based on anything in the record and is purely speculative. Because the record does not clearly indicate that a nondisclosure occurred, we find no evident, obvious, and clear error in the court's failure to declare a mistrial or order a new trial sua sponte. Point II is denied.
In Point III, Townsel contends the circuit court erred in allowing the State to use confidential documents, specifically, probation violation reports, to impeach defense witness Kambria Williams. On direct examination, Williams testified that Townsel was in her (Townsel's) apartment when Collins was killed. Williams further testified on direct that she had been living in the apartment complex where the crimes occurred for about a year prior to the incident.
On cross-examination, the State asked Williams about her prior convictions and probation:
Q. Ms. Kambria Williams, tell me what crimes you've been convicted of.
A. Forgery, two counts one in Jackson County, one in Clay County.
Q. Ever given probation?
A. Yes.
Q. But you weren't successful?
A. No.
Q. In fact, you promised the Court, when you got probation, you would pay restitution?
A. Yes.
Q. You didn't pay a dime?
A. No.
Q. So now you're in prison because you can't keep your promises, correct?
A. I'm in prison because probation is a set up for failure.
Q. Set up for failure. Were you arrested on probation smoking weed in Raytown?
A. I wasn't smoking weed -
At that point, defense counsel objected that this question went beyond "proper impeachment for priors." The court sustained the objection to the State's last question, and the State moved on.
Later during the State's cross-examination, the subject of Williams's probation came up again:
*740 Q. You say you lived at Harlem for over a year at the time.
A. I lived there for a year. Maybe a little under.
Q. That's not when you told your probation officer you moved there correct, is it?
A. No. No, I don't think it is. And once again, I'm not the one on trial.
At this point, defense counsel objected again on the grounds that the question went "beyond proper impeachment" and that "[w]hat she may or may not have told the probation officer is not relevant." The State responded that Williams had contradicted herself. After the court overruled defense counsel's objection, the State asked Williams, "So you told your probation officer a lie about when you moved to Harlem? Yes or no?" Williams responded, "Yes."
In her motion for new trial, Townsel alleged that the court plainly erred in overruling her objections to the State's cross-examining Williams regarding her probation violations. Townsel argued, for the first time, that the information obtained by probation and parole officers was privileged and could not be disseminated to a jury. During the hearing on the motion for new trial, defense counsel argued that the State should not have had the information about Williams's probation violations. In response, the State explained that the prosecutor is given probation violation reports for persons on probation in Clay County. Additionally, the State questioned Townsel's standing to object to a possible disclosure violation of Williams's confidential information. Lastly, the State argued that Williams injected the issue about what she told her probation officer concerning when she moved into the apartment complex into the case by testifying about it on direct examination. The court denied this claim of error, finding that the information was used as a prior inconsistent statement based on testimony that the defense had elicited during direct examination.
On appeal, Townsel asserts that the court erred in allowing the State to cross-examine Williams about information contained in her probation violation reports. Her claim of error is based on Section 559.125.2,[5] which provides:
Information and data obtained by a probation or parole officer shall be privileged information and shall not be receivable in any court. Such information shall not be disclosed directly or indirectly to anyone other than the members of a parole board and the judge entitled to receive reports, except the court or the board may in its discretion permit the inspection of the report, or parts of such report, by the defendant, or offender or his or her attorney, or other person having a proper interest therein.
Townsel argues that allowing the State to cross-examine Williams about information contained in her probation violation reports violated Section 559.125.2 because the reports were not obtained through lawful discovery in Townsel's case and were confidential. Because Townsel did not object on these grounds at trial and instead raised this claim for the first time in her motion for new trial, this allegation of error is not preserved. Review is for plain error only.
We need not determine whether the State's cross-examination of Williams violated Section 559.125.2 because Townsel cannot prove that a miscarriage of justice or a manifest injustice *741 resulted.[6] See State v. Kunonga , 490 S.W.3d 746, 756 (Mo. App. 2016) (noting that, under plain error review, we need not determine if the circuit court's action was erroneous where the appellant cannot demonstrate a miscarriage of justice or manifest injustice occurred). She "must prove that the jury's verdict would have been different but for the inadmissible evidence, not merely that the inadmissible evidence contributed to the jury's verdict." Id. Townsel cannot meet this burden because the evidence of her guilt was overwhelming. In addition to the multiple identifications of Townsel as Collins's attacker, the knife found in her sink had Collins's blood on the blade and her DNA on the handle. Additionally, evidence of Mandy's spontaneous remark during the 911 call that the attacker had cut herself while stabbing Collins, combined with evidence that Townsel had a cut on her hand and testimony explaining the various ways that a person can cut themselves while stabbing someone else, points to Townsel's guilt. In light of this evidence, Townsel cannot show that there is a reasonable probability that the jury's verdict would have been different but for the State's cross-examination of Williams about information contained in her probation violation reports. The circuit court did not plainly err in allowing the cross-examination. Point III is denied.
CONCLUSION
The judgment is affirmed.
All Concur.

To avoid confusion, we will refer to the Donlans individually by their first names. No disrespect or familiarity is intended.

According to a KCPD detective who has investigated stabbings, it is not uncommon for assailants to injure themselves during a stabbing. The detective offered several reasons for this, including that blood makes the handle slippery, bone or other material stops the knife and causes it to slip in the assailant's hand, the assailant's hand may be sweaty, and the victim may knock the knife.

In her argument under Point I, Townsel alleges other errors in the court's rulings and actions, none of which were raised in her point relied on. Pursuant to Rule 84.04(e), " '[i]ssues raised in the argument portion of a brief but not in the point relied on are not preserved for appeal.' " State v. Ellis , 512 S.W.3d 816, 831 (Mo. App. 2016) (citation omitted).

Townsel cites Beggs v. Universal C.I.T. Credit Corporation , 387 S.W.2d 499, 503 (Mo. banc 1965), for the proposition that "[a] prospective juror cannot be the judge of his own qualifications." In Beggs , jurors failed to respond when asked unequivocally if they had, in the past, been a plaintiff or a defendant in a lawsuit. Id. at 504. When it was later discovered that these jurors had been involved in lawsuits, several of them explained that they did not respond because they did not think it was relevant to the case at bar. Id. The initial question in Beggs asked jurors only if they had been a party in a past lawsuit and did not ask them to determine whether the fact that they had been a party to a lawsuit would affect their ability to serve. That some jurors made that subjective judgment about the effect of their past participation in a lawsuit and decided not respond truthfully to the unequivocal question about whether they had been a party in a past lawsuit constituted intentional nondisclosure. Id. In contrast, the question in this case did not ask jurors clearly and unequivocally if they had anything traumatic or upsetting going on in their life; rather, it asked the jurors to make a subjective determination about whether they had anything traumatic or upsetting going on in their life that would distract them from being a fair and impartial juror.

All statutory references are to the Revised Statutes of Missouri 2016.

Ex gratia , we note that, because Williams was on probation in Clay County, the prosecutor qualified as an "other person having a proper interest" in Williams's probation violation reports under Section 559.125.2. Consequently, Townsel's assertion that the prosecutor obtained the reports unlawfully is without merit.