IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT
 STATE OF MISSOURI, ex rel. )
 JESSICA J. JONES, GENTRY )
 COUNTY PROSECUTING )
 ATTORNEY, )
 Relator, )
 )
 v. ) WD84255
 )
 THE HONORABLE ROGER PROKES, ) FILED: April 27, 2021
 JUDGE OF THE CIRCUIT COURT OF )
 GENTRY COUNTY, MISSOURI, )
 DIVISION 1, )
 Respondent. )
 On Original Petition for Writ of Mandamus
 Before Writ Division: Lisa White Hardwick, P.J.,
 and Alok Ahuja and W. Douglas Thomson, JJ.
 Due to two earlier felony convictions, Michael E. Wood was placed on

supervised probation. A condition of his probation was that he attend a substance-
abuse treatment program. The State contends that Wood provided his probation

officer with falsified attendance sheets from a treatment program. As a result, it

charged him in the Circuit Court of Gentry County with sixteen felony counts of

forgery, and with two felony counts of tampering with a judicial officer.

 Wood filed a motion to exclude testimony from his probation officer, and the

allegedly falsified attendance sheets themselves, on the basis that the evidence was
privileged under §§ 549.500 and 559.125.1 The circuit court sustained the motion.

Jessica J. Jones, the Gentry County Prosecuting Attorney, filed a Petition for Writ

of Mandamus in this Court, contending that the circuit court erred in sustaining

Wood’s motion to exclude evidence. Jones argues that the privilege statutes should

not be read to exclude evidence of Wood’s alleged commission of crimes in the course

of his interactions with his probation officer.

 We issued a preliminary writ of mandamus. We conclude that §§ 549.500

and 559.125 do not prevent the admission of evidence establishing that Wood’s

communications with his probation officer themselves constituted crimes. We

accordingly make our writ of mandamus permanent, and direct the circuit court to

rescind its order excluding evidence.

 Factual Background
 On August 4, 2016, the Circuit Court of Gentry County sentenced Wood in

Case No. 15GE-CR00003-01 to four years’ imprisonment, after Wood pleaded guilty

to two felonies: driving while intoxicated; and driving while suspended or revoked.

Pursuant to § 559.115.3, the circuit court recommended that Wood be placed in a

120-day institutional treatment program. After receiving a favorable report

concerning Wood’s conduct in the treatment program, the circuit court entered an

order on November 15, 2016, placing Wood on five years’ supervised probation. One

of the special conditions of Wood’s probation was that he “shall attend an aftercare

program focusing on substance abuse.”

 On March 8 and March 28, 2018, Wood allegedly provided his probation

officer with attendance sheets from Alcoholics Anonymous (“AA”) and Narcotics

Anonymous (“NA”) programs, showing that he had attended AA and NA meetings

on sixteen different occasions in 2017 and 2018.

 1 Unless otherwise indicated, statutory citations refer to the 2016 edition of the
Revised Statutes of Missouri, updated by the 2017 Supplement.

 2
 On April 16, 2018, Wood was charged in the Circuit Court of Gentry County

in Case No. 18GE-CR00038-02 with eighteen felony counts: sixteen counts of

forgery, in violation of § 570.090; and two counts of tampering with a judicial officer,

in violation of § 575.095. The State alleged in its felony complaint that Wood forged

signatures and other endorsements on the AA and NA attendance sheets. The

complaint also alleged that, by giving the forged attendance records to his probation

officer, Wood committed the offense of tampering with a judicial officer, because he

had attempted to influence his probation officer in the performance of her official

duties by deception.

 Trial was set to commence on November 16, 2020. On November 3, 2020,

Wood filed a motion to exclude testimony from his probation officer at trial, as well

as any other evidence derived from his interactions with her (including the allegedly

falsified attendance sheets). Wood contended that the evidence was privileged from

disclosure under §§ 549.500 and 559.125.

 A hearing was held on Wood’s motion on November 12, 2020. On November

13, 2020, the circuit court entered its order sustaining the motion and ordering that

the State “be prohibited from eliciting testimony or evidence from [Wood’s probation

officer], regarding information obtained by her in her capacity as a Probation
Officer, regarding AA/NA endorsements presented to her by Defendant.”

 Jones filed her Petition for Writ of Mandamus in this Court on January 11,

2021.2 Respondent filed suggestions in opposition on January 25, 2021. On

January 28, 2021, this Court entered its preliminary writ of mandamus, staying

 2 The State filed a notice of appeal from the circuit court’s exclusion order on
November 13, 2020, which was docketed in this Court as No. WD84156. The appeal was
dismissed for failure to prosecute on February 4, 2021, after we issued our preliminary writ
of mandamus in this proceeding. As we explain in § I of the Discussion which follows, the
circuit court’s exclusion order was not appealable, and the prosecution’s proper remedy was
through the current writ proceeding.

 3
proceedings in the underlying case, and setting the writ proceeding for briefing and

oral argument.3

 Discussion
 I.
 Mandamus is a discretionary writ that is appropriate when a
 court has exceeded its jurisdiction or authority, and where no remedy
 exists through appeal. “Ordinarily, mandamus is the proper remedy to
 compel the discharge of ministerial functions, but not to control the
 exercise of discretionary powers.” However, if the respondent's actions
 are wrong as a matter of law, then she has abused any discretion she
 may have had, and mandamus is appropriate.
State ex rel. Lovelace v. Mennemeyer, 421 S.W.3d 555, 556 (Mo. App. E.D. 2014)

(citing and quoting State ex rel. Valentine v. Orr, 366 S.W.3d 534, 538 (Mo. 2012);

other citation omitted). “A litigant asking relief by mandamus must allege and

prove that she has a clear, unequivocal, specific right to a thing claimed.” State ex

rel. Henderson v. Asel, 566 S.W.3d 596, 598 (Mo. 2019) (citations and internal

quotation marks omitted).

 The application of privileges, and the interpretation of statutes, present

questions of law. State ex rel. Behrendt v. Neill, 337 S.W.3d 727, 729 (Mo. App. E.D.

2011); Richard v. Mo. Dep’t of Corr., 162 S.W.3d 35, 37 (Mo. App. W.D. 2005). If the

circuit court’s exclusion of the probation officer’s testimony, and of the allegedly
forged attendance sheets, misconstrues the privilege recognized by §§ 549.500 and

559.125.1, then that decision was “wrong as a matter of law,” and mandamus relief

is appropriate.

 3 Respondent has moved to strike Jones’ Exhibit B, which consists of the
treatment program attendance sheets allegedly forged by Wood and provided to his
probation officer. It appears that the attendance sheets were not submitted to Respondent
in connection with his consideration of Wood’s motion to exclude evidence. Because the
attendance sheets were not part of the circuit court record, the motion to strike is granted.
We observe that the actual content or appearance of the attendance sheets is not relevant
to our disposition of Jones’ writ petition.

 4
 The State has no adequate remedy by appeal. The State would not be

entitled to appeal following a trial in which the challenged evidence was excluded

and Wood was acquitted, because the State is prohibited from appealing from final

judgments in criminal cases “in those cases where the possible outcome of such an

appeal would result in double jeopardy for the defendant.” § 547.200.2. The State

is barred by double jeopardy principles from obtaining a new trial based on the

erroneous exclusion of evidence in a trial which resulted in a defendant’s acquittal.

See, e.g., Smalis v. Pa., 476 U.S. 140, 145-46 (1986); Az. v. Manypenny, 451 U.S.

232, 246 (1981) (“the constitutional ban against double jeopardy . . . bars an appeal

by the prosecutor following a jury verdict of acquittal”).

 The State also has no avenue for an interlocutory appeal of the circuit court’s

evidentiary ruling. Section 547.200.1(3) provides that “[a]n [interlocutory] appeal

may be taken by the state . . . from any order or judgment the substantive effect of

which results in . . . [s]uppressing evidence.” But the circuit court’s ruling in this

case did not involve “suppress[ion] [of] evidence” in the relevant sense. We have

explained that

 [t]he right to appeal under section 547.200(3) is “linked directly”
 to the five bases for filing a suppression motion set forth in section
 542.296. Each ground for suppression under section 542.296.5 involves
 an illegal search and seizure. Consequently, the State's right to appeal
 under section 547.200 “has been consistently circumscribed to those
 cases where illegally obtained evidence is at issue.”
 An order suppressing evidence is not the same as an order
 excluding evidence based on a rule of evidence. “Suppression is a term
 used for evidence which is not objectionable as violating any rule of
 evidence, but which has been illegally obtained.” . . . “In essence,
 evidence that is excluded for procedural reasons or for violation of the
 rules of evidence or for any other reason not having its genesis in the
 argument that it was illegally obtained is not appealable by the State.”

 5
State v. Woodworth, 413 S.W.3d 678, 682 (Mo. App. W.D. 2013); accord State v.

Lilly, 410 S.W.3d 699, 701-03 (Mo. App. W.D. 2013); State v. Moad, 294 S.W.3d 83,

86-88 (Mo. App. W.D. 2009).

 In this case, the circuit court entered an order excluding evidence of Wood’s

communications with his probation officer, not because the evidence had been

illegally obtained, but because the court believed the evidence was subject to a

statutory privilege. This writ does not concern the suppression of illegally obtained

evidence. The State accordingly had no available remedy by appeal, and a petition

for writ of mandamus was the appropriate method for the prosecution to seek our

review of the circuit court’s exclusion order.

 II.
 Resolution of this case depends on the interpretation of §§ 549.500 and

559.125, and the interplay of those privilege statutes with the statutes

criminalizing forgery and tampering with a judicial officer.

 We begin by emphasizing certain fundamental canons of statutory

interpretation that guide our analysis. Our “primary goal” in interpreting any

statute “is to give effect to legislative intent as reflected in the plain language of the

statute.” State ex rel. Bowman v. Inman, 516 S.W.3d 367, 369 (Mo. 2017) (citation

and internal quotation marks omitted).

 Where multiple statutes are implicated in particular factual circumstances,

we must attempt to harmonize, and give effect to, all of the relevant statutes.

“‘When two statutory provisions covering the same subject matter are unambiguous

standing separately but are in conflict when examined together, a reviewing court

must attempt to harmonize them and give them both effect.’” State ex rel. Hillman

v. Beger, 566 S.W.3d 600, 605 (Mo. 2019) (quoting Earth Island Inst. v. Union Elec.

Co., 456 S.W.3d 27, 33 (Mo. 2015)); accord Roesing v. Dir. of Revenue, 573 S.W.3d
634, 638-39 (Mo. 2019) (“Under the doctrine of in pari materia, statutes relating to

 6
the same subject matter should be construed to achieve a harmonious

interpretation.” (citation omitted)). In particular, we should avoid interpretations of

statutes which leave a criminal statute “incapable of being enforced,” Leiser v. City

of Wildwood, 59 S.W.3d 597, 604 (Mo. App. E.D. 2001) (quoting City of Joplin v.

Joplin Water Works Co., 386 S.W.2d 369, 373–74 (Mo. 1965)), or that “render some

phrases mere surplusage.” Middleton v. Mo. Dep't of Corr., 278 S.W.3d 193, 196

(Mo. 2009).

 The Missouri Supreme Court has emphasized that “[a] court will look beyond

the plain meaning of the statute . . . when the language is ambiguous or would lead

to an absurd or illogical result.” Akins v. Dir. of Revenue, 303 S.W.3d 563, 565 (Mo.

2010) (citing Spradlin v. City of Fulton, 982 S.W.2d 255, 258 (Mo. 1998)). When

engaging in statutory interpretation, “we are to presume a logical result, as opposed

to an absurd or unreasonable one,” and “[w]e are always led to avoid statutory

interpretations that are unjust, absurd, or unreasonable.” State v. Slavens, 375

S.W.3d 915, 919 (Mo. App. S.D. 2012) (citations and internal quotation marks

omitted); see also West v. State, 605 S.W.3d 607, 612 (Mo. App. W.D. 2020).

 With these principles in mind, we turn to the text of the relevant statutes.

Section 549.500 provides:
 All documents prepared or obtained in the discharge of official
 duties by any member or employee of the board of probation and parole
 shall be privileged and shall not be disclosed directly or indirectly to
 anyone other than members of the board and other authorized
 employees of the department . . . . The board may at its discretion
 permit the inspection of the report or parts thereof by the offender or
 his attorney or other persons having a proper interest therein.
And § 559.125.2 states:

 Information and data obtained by a probation or parole officer
 shall be privileged information and shall not be receivable in any court.
 Such information shall not be disclosed directly or indirectly to anyone
 other than the members of a parole board and the judge entitled to
 receive reports, except the court or the board may in its discretion

 7
 permit the inspection of the report, or parts of such report, by the
 defendant, or offender or his attorney, or other person having a proper
 interest therein.
 This Court has explained that the purpose of § 559.125.2 (and presumably, of

§ 549.500) is to foster the relationship between a probation officer and an offender,

by assuring the offender “that information learned by the probation officer will be

held in confidence, subject only to specific exceptions.” Richardson v. Sherwood, 337

S.W.3d 58, 65 (Mo. App. W.D. 2011).

 The privilege statutes are not the only statutes at issue in this case, however.

Section 575.095.1, one of the statutes under which Wood was charged, provides that

 [a] person commits the offense of tampering with a judicial
 officer if, with the purpose to harass, intimidate or influence a judicial
 officer in the performance of such officer's official duties, such person:
 (1) Threatens or causes harm to such judicial officer or
 members of such judicial officer's family;
 (2) Uses force, threats, or deception against or toward such
 judicial officer or members of such judicial officer's family;
 (3) Offers, conveys or agrees to convey any benefit direct or
 indirect upon such judicial officer or such judicial officer's family; [or]
 (4) Engages in conduct reasonably calculated to harass or
 alarm such judicial officer or such judicial officer's family, including
 stalking pursuant to section 565.225 or 565.227.
The statute specifically defines a protected “judicial officer” to include a “state

probation or parole officer.” § 575.095.2. Similarly, § 570.090.1 defines forgery to

include the act of “possess[ing] for the purpose of using as genuine, or transfer[ring]

with the knowledge or belief that it will be used as genuine, any writing or other

thing,” which has been made or altered “so that it purports to have been made by

another . . . or by authority of one who did not give such authority,” “with the

purpose to defraud.”

 Like the statutes establishing the probation-officer privilege, the law
prohibiting tampering with a judicial officer serves important purposes. It “seek[s]

 8
to assure the public that judges confine their decisions to the evidence and law

applicable to a case rather than threats and intimidation.” State v. Cella, 32 S.W.3d

114, 118 (Mo. 2000). The purpose of the statute is to safeguard the “independence

and decision-making ability” of judicial officers. State v. Hause, 371 S.W.3d 836,

840 (Mo. App. W.D. 2012). Consistent with free-speech rights, § 575.095.1 prohibits

speech which “offends the State's legitimate interest in securing its judicial

proceedings.” State v. McGirk, 999 S.W.2d 298, 303 (Mo. App. W.D. 1999).

 To hold that §§ 549.500 and 559.125 create an absolute privilege surrounding

all communications between a probation officer and an offender, and all information

learned by a probation officer, would immunize from prosecution many acts which

the legislature intended to prohibit when it enacted the forgery and tampering-

with-a-judicial-officer statutes. Probation officers are specifically included within

the definition of “judicial officers” who are protected from tampering by § 575.095.

Many of the acts which could constitute illegal “tampering” would involve

communications between an offender and their probation officer: issuing threats;

using deception; offering or agreeing to provide a benefit; and many acts “calculated

to harass or alarm such judicial officer.” § 575.095.1(4). Similarly, the crime of

forgery very frequently involves an act by which an offender provides false or
deceptive information to the victim. Yet according to Wood, the communications by

which an offender would frequently commit the offenses of tampering or forgery

against a probation officer would be immune from prosecution, since evidence of the

illegal communications themselves would be inadmissible. It would be an absurd

and unreasonable result to interpret the privilege statutes to give an offender

license to attempt to deceive, harass, threaten, or bribe his or her probation officer

with impunity.

 The privilege recognized in §§ 549.500 and 559.125 can be harmonized with
the forgery and tampering-with-a-judicial-officer statutes, and meaningful effect

 9
can be given to all of the relevant statutes, by excluding from the probation-officer

privilege those communications or information which themselves constitute the

commission of a criminal offense. We emphasize that the present case does not

involve communications between Wood and his probation officer, or information

provided by Wood to his probation officer, which allegedly constitutes evidence of a

separate crime committed by Wood. Instead, this is the unusual case in which

Wood’s interactions with his probation officer constitute the crimes themselves. The

privilege statutes cannot be read to make it impossible to enforce the forgery and

tampering-with-a-judicial-officer statutes, in the infrequent circumstances where

the two sets of statutes intersect in this way.

 It is significant that the statutes creating the privilege for information

possessed by probation officers (§§ 549.500 and 559.125), and the statute

criminalizing tampering with a judicial officer (§ 575.090.1), were passed in the

same legislative session by the same General Assembly, and became effective on the

same day. The proposition that statutes were “intended to be consistent and

harmonious . . . is particularly applicable when the two acts are passed at the same

legislative session.” Rothschild v. State Tax Com’n, 762 S.W.2d 35, 37 (Mo. 1988);

see also State ex rel. Karbe v. Bader, 78 S.W.2d 835, 839 (Mo. 1934) (“It is not to be
presumed that the same body of [legislators] would pass conflicting and incongruous

acts.”).

 We also note that, by its terms, the probation-officer privilege embodied in

§§ 549.500 and 559.125.2 is not absolute. To the contrary, both statutes specify that

“reports or parts thereof” which are subject to the privilege may be provided to

“other persons having a proper interest therein.” See Webb v. State, 334 S.W.3d

126, 130-31 n.6 (Mo. 2011) (where defendant contends that he was incorrectly

advised concerning the minimum prison term before pleading guilty, and State
contends that the Sentencing Assessment Report (“SAR”) reviewed by the defendant

 10
accurately reflects the minimum term, “any appellate court considering the case

below has ‘a proper interest therein’ to view the SAR”); State v. Townsel, 564 S.W.3d

731, 741 n.6 (Mo. App. W.D. 2018) (observing ex gratia that, “because Williams was

on probation in Clay County, the prosecutor qualified as an ‘other person having a

proper interest’ in Williams’s probation violation reports under Section 559.125.2”).

 Missouri’s courts have recognized in other contexts that statutory privileges

cannot be invoked to shield criminal activity from prosecution. “It is settled in

Missouri that though a ‘privileged communication may be a shield of defense . . . it

cannot be used as a sword or weapon of offense to enable persons to carry out

improper conduct.’” State ex rel. Koster v. Cain, 383 S.W.3d 105, 121 (Mo. App.

W.D. 2012) (citations omitted).

 For example, State v. Heistand, 708 S.W.2d 125 (Mo. 1986), involved

prosecution of a husband for robbery and assault. At the time, the spousal privilege

statute, § 546.260, RSMo 1978, stated in absolute terms that “in no case shall

husband or wife . . . be permitted to disclose confidential communications had or

made between them in the relation of such husband and wife.” Despite the

seemingly unqualified nature of the statutory privilege, the Missouri Supreme

Court held that the privilege did not require the exclusion of a letter written by the
defendant-husband to his wife, in which he asked her to persuade a third party to

provide perjured alibi testimony in the husband’s case. The Court refused to read

the spousal privilege to shield communications which themselves constituted a

crime, or contemplated future criminal conduct.

 The letter clearly suggests that the defendant’s wife should
 procure one “Jack” to commit perjury at the defendant’s trial, so as to
 provide an alibi. Subornation of perjury is a felony . . . in Missouri . . . .
 The defendant also enlists his wife as a co-conspirator in the
 subornation enterprise. We believe that, as a matter of public policy,
 the husband-wife privilege should not apply to communications
 relating to contemplated future crime. . . . The public interest in

 11
 preventing crime far outweighs the possible harm to the marital
 relationship.
Id. at 126 (footnotes omitted). The Court recognized this exception to the spousal

privilege, even though the statute defining the privilege did not itself contain

exceptions for communications which constitute a crime, or which contemplate

future crime.

 The dissent points out that the marital privilege emanates from
 a statute, § 546.260, RSMo 1978, . . . and argues that this statute
 should be subject only to such exceptions as the legislature chooses to
 enact. The courts, however, have not applied this statute . . . in
 absolute terms, but rather have created a number of exceptions based
 on good cause and public policy, in the conviction that the legislature
 did not intend absolute reading . . . . The attorney-client privilege is
 also codified in Missouri . . . but our courts recognize the exception
 [involving contemplated future crime].
Id. at 126 (footnote omitted).

 Following Heistand, this Court recognized that “[t]he [spousal privilege]

statute’s prohibitions against the disclosure of ‘confidential communications,’ . . .

has not been construed to be absolute,” and that “threats of violence by one spouse

against the other are not considered confidential communications within the

meaning of § 546.260.” State v. Wolford, 754 S.W.2d 875, 882 (Mo. App. W.D. 1988);

see also, e.g., State v. Applegate, 668 S.W.2d 624, 635 (Mo. App. S.D. 1984) ("The
defendant's threats to do violence to his former spouse were not confidential

communications within the meaning of § 546.260."; citing State v. Johnson, 586

S.W.2d 437, 441 n.3 (Mo. App. E.D. 1979)); State v. Brydon, 626 S.W.2d 443, 452-53

(Mo. App. W.D. 1981) (marital privilege did not apply "to prevent the testimony of

the wife against the husband for injury done or threatened to her person").

 Similarly, the Missouri Supreme Court “has not held that the attorney-client

privilege is absolute, recognizing a crime-fraud exception to the attorney-client

privilege for underlying criminal conduct.” State ex rel. Peabody Coal Co. v. Clark,
863 S.W.2d 604, 607 (Mo. 1993). The Court explained:

 12
 It is true that after a crime has been committed, the accused or guilty
 person may freely consult and even disclose his guilt to his attorney, in
 order to prepare his defense. Under such circumstances, the law puts
 the seal of secrecy upon such communications. But . . . a person
 [cannot] employ an attorney for the purpose of aiding and abetting him
 in the commission of a future crime or fraud, and thereby seal the lips
 of his lawyer to secrecy and thus prevent the exposure or detection of
 such crime or fraud . . . .
Id. (quoting Gebhardt v. United Rys. Co., 220 S.W. 677, 679 (Mo. 1920)); accord

Burger v. Crocker, 392 S.W.2d 640, 644-45 (Mo. App. 1965) (“privileged

communication may be a shield of defense as to crimes already committed, but it

cannot be used as a sword or weapon of offense to enable persons to carry out

contemplated crimes against society”; quoting Gebhardt, 220 S.W. at 679).4

 The Missouri Supreme Court addressed an analogous issue in State v.

Churchill, 454 S.W.3d 328 (Mo. 2015). In Churchill, the defendant contended that

she could not be prosecuted for perjury based on testimony she gave at a protective-

custody hearing for one of her children, because her testimony was taken in the

earlier proceeding in violation of her constitutional privilege against self-

incrimination. The Supreme Court disagreed:

 [E]ven assuming that Churchill had (and properly asserted) a
 constitutional privilege against self-incrimination during the initial
 protective custody hearing, and even assuming that the judge violated
 this privilege by making Churchill testify, this privilege does not
 entitle her to commit perjury or prohibit the state from using her false
 testimony against her to prove that crime. The privilege applies only
 to a statement that constitutes an admission about a completed (or
 ongoing) crime, not a statement that constitutes a criminal act in
 itself, e.g., perjury.

 4 In Peabody Coal, the Court held that, to invoke this “crime-fraud exception”
to the attorney-client privilege, (1) “the seeking party must make a prima facie showing
that the privileged party has committed a crime or fraud”; and (2) “the seeking party must
demonstrate that the privileged information bears a direct and contemporaneous
relationship to the crime or fraud alleged.” 863 S.W.2d at 608 (citations omitted). Wood did
not argue in the circuit court that the State had failed to make an adequate showing to
invoke a similar crime-fraud exception to the probation-officer privilege. Instead, his
argument was only that no such exception should be recognized.

 13
Id. at 339.

 Respondent emphasizes that the spousal privilege and the attorney-client

privilege had their origins in common law, and that the caselaw interpreting them

is accordingly distinguishable. But both privileges were codified in statute at the

time of the decisions cited in the text. Moreover, in Heistand, 708 S.W.2d at 126,

the Missouri Supreme Court rejected precisely the argument Respondent makes

here: that the legislature intended the statutory privilege to be absolute, and that

the courts had no authority to recognize exceptions not expressly set forth in the

privilege statute itself.

 Accordingly, we hold that the probation-officer privilege established by

§§ 549.500 and 559.125 does not prevent the introduction into evidence of a

communication with, or information provided to, a probation officer, where the

communication or provision of information “constitutes a criminal act in itself.”

Churchill, 454 S.W.3d at 339. The circuit court erred as a matter of law in

excluding the probation officer’s testimony, or the allegedly falsified documents

Wood provided to her, on the basis of the privilege.

 Conclusion
 We issue our permanent writ in mandamus directing the circuit court to

vacate its order sustaining Wood’s motion to exclude testimony and evidence based

on the privilege recognized in §§ 549.500 and 559.125, and to instead enter its order

denying that motion.

 Alok Ahuja, Judge
All concur.

 14